249 So.2d 460 (1971)
Donald L. EAGLE, Appellant,
v.
STATE of Florida, Appellee.
No. N-225.
District Court of Appeal of Florida, First District.
May 25, 1971.
Rehearing Denied July 9, 1971.
Louis O. Frost, Jr., Public Defender, Gerald Sohn and Bartley K. Vickers, Asst. Public Defenders, for appellant.
Robert L. Shevin, Atty. Gen., and Nelson E. Bailey, Asst. Atty. Gen., for appellee.
WIGGINTON, Acting Chief Judge.
Appellant was indicted, tried by a jury and found guilty of the offense of forcible rape. He seeks review and reversal of the *461 judgment affirming the jury's verdict and sentencing him to imprisonment for a term of twenty years.
On April 25, 1969, appellant was charged in two separate indictments returned by the grand jury of Duval County. By the first indictment he was charged with killing Sandra Sue Lincicome with a premeditated design to effect her death by strangling her with his hands and a woman's stocking. By the second indictment he was charged with having forcibly raped the same Sandra Sue Lincicome at the same time and place which he was charged in the first indictment with having killed her.
Appellant was first brought to trial on the indictment charging him with murder. At the outset of the trial the prosecuting attorney made an opening statement to the jury in which he assured it that the State's evidence would establish that defendant raped and murdered the victim named in the indictment. He carefully pointed out to the jury that the prosecution was not contending, nor would it attempt to prove, that defendant killed the victim with any premeditated design to effect her death. He explained that the offense of first degree murder with which defendant was charged could be established by proof that the victim was killed by defendant while perpetrating or attempting to perpetrate the criminal offense of rape. The prosecutor then proceeded to outline the State's evidence by which he expected to prove that defendant killed the victim while in the act of raping her, which proof would establish his guilt of first degree murder as charged in the indictment.
The evidence introduced by the State during the trial supported only the single theory of felony murder.[1] If believed by the jury, it was sufficient to reasonably support the conclusion that following a prolonged drinking party defendant left the premises with the victim and upon reaching a vacant lot adjacent to the apartment building in which the party was held, he raped her, and in the process of the struggle which accompanied this effort, he strangled her to death with his hands and a stocking drawn tightly around her neck. None of the proof offered by the prosecution to sustain a conviction established or attempted to establish that defendant killed the victim from a premeditated design to effect her death. The evidence adduced on behalf of the defendant was wholly sufficient, if believed by the jury, to establish that although the victim was raped and died from strangulation by the one who assaulted her, the person guilty of the crime was someone other than defendant. For the purpose of deciding the controlling question of law which this appeal presents, we perceive that no useful purpose would be served by recounting the gruesome details and deplorable events that surrounded the homicide with which defendant was charged.
At the conclusion of the evidence, defendant's counsel made a motion for a directed verdict on the ground that the State had failed to prove by any competent or substantial evidence that defendant killed the victim from a premeditated design to effect her death as charged in the indictment. From our review of the evidence it clearly appears that had the prosecution been predicated upon the theory that defendant committed the murder from a premeditated design to effect the victim's death, the motion would have been well-founded. In denying the motion the trial judge recognized that the prosecution was not relying upon proof of premeditation but upon its proof of felony murder to support the conviction it sought when he stated that he was satisfied from the evidence that the victim was killed while in the process of being raped.
In the conference between the court and counsel on the instructions to be given the *462 jury, the prosecuting attorney clearly declared the State's position to be that its case was not based in any way on proof of a premeditated design to effect the death of the victim, but was grounded exclusively on the felony murder rule.[2] In conformity with this theory the trial court carefully and correctly instructed the jury on the law relative to felony murder and meticulously defined the various elements of forcible rape.[3] In its instructions the court admonished the jury that the defendant was not being tried at that time for the crime of rape and the only reason why evidence relating to such crime had been admitted was so that the jury could consider it in connection with the alleged murder.
In his closing argument to the jury the prosecuting attorney again emphatically declared that the State was not asking that defendant be found guilty of having murdered the victim from any premeditated design to effect her death, and it was not the State's position that defendant set about deliberately to kill the murdered girl. The prosecutor explained that the theory of the State's case was that defendant was guilty of felony murder by having strangled the victim while in the process of raping her. He then proceeded to recount to the jury the evidence which supported the State's theory of rape by defendant and her death from strangulation. It was upon a consideration of the foregoing circumstances that the jury, after careful deliberation, returned its verdict finding defendant not guilty as charged.
The totality of the evidence reasonably leads unerringly to the single conclusion that the victim was strangled to death while in the process of being sexually assaulted and raped. The evidence is not reasonably susceptible of any contrary hypothesis. It is equally clear that the prosecution failed to convince the jury beyond a reasonable doubt that defendant accompanied the victim when she left the party on the night in question and was the one who assaulted and killed her as contended by the State. The jury apparently preferred to accept the contrary evidence which tended to establish that defendant did not leave the party with the victim but remained at all times within the apartment where the party was held until the next morning when he returned to his place of employment.
Following his exoneration of the charge of murder, defendant was placed on trial for the offense of rape as charged in the second indictment. The public defender representing defendant filed a motion to dismiss the indictment on the ground of former jeopardy, res judicata, and collateral estoppel. It was defendant's position that in his prosecution for felony murder the issue of whether he was the person who unlawfully assaulted and raped the victim was an essential element of the prosecution against him and an issue which was tried by the jury and determined in his favor. Such being the case, defendant insisted that to again be placed on trial for the identical rape which was an essential issue in the prosecution for murder for which he was acquitted, places him for a second time in jeopardy for the same criminal offense contrary to the constitutional prohibition against former jeopardy and in violation of the law of collateral estoppel. Upon consideration of the motion so filed by defendant, the trial court entered its order of denial and directed that the case proceed to trial. The evidence introduced at the trial of this case was essentially the same as that introduced in the trial for murder. At the conclusion of the trial, however, the jury in this case found defendant guilty as charged, and it is from the judgment of conviction and sentence based upon that verdict that this appeal is taken.
The declaration of rights embodied in our state constitution provides that no person shall be twice put in jeopardy for the *463 same offense.[4] In Benton v. Maryland[5] the Supreme Court of the United States held that the former jeopardy clause of the Fifth Amendment is applicable to the states by the due process clause of the Fourteenth Amendment to the Federal Constitution.
In State ex rel. Glenn v. Klein,[6] the petitioner Glenn had been indicted and tried for first degree felony murder which occurred while defendant was attempting to perpetrate the crime of robbery. He was convicted of manslaughter, a lesser offense included in the greater one for which he was indicted. The evidence in that case established that Glenn and a confederate were engaged in the act of committing a robbery when his confederate was killed by the intended victim. Glenn was prosecuted on the theory that the killing of his confederate occurred at a time when he and the confederate were engaged in the commission of a felony. Since the evidence revealed without dispute that it was the victim, and not Glenn, who killed the confederate, Glenn's guilt of the offense charged rested entirely upon proof that he was participating in the crime of robbery at the time the killing occurred.
Glenn was later charged by information with the same robbery involved in the felony murder prosecution against him. His motion to quash the information on the ground of double jeopardy was denied, and he sought a writ of prohibition in the Third District Court of Appeal. In granting prohibition the District Court held that under the facts of that case, the prosecution of Glenn for felony murder included and involved the issue of whether he was at the time of the killing a participant in the robbery, and that since the verdict of guilt was necessarily based upon a finding that he was in fact such a participant, the subsequent charge of robbery was interdicted by the constitutional provision against double jeopardy. The fact that Glenn was convicted under the indictment for felony murder whereas appellant in the case sub judice was acquitted would appear to be immaterial insofar as concerns applicability of the collateral estoppel rule.
In the case of People v. Cunningham[7] the defendant Cunningham was charged and tried for the offense of felony murder. The prosecution sought to establish that Cunningham participated with one O'Bleanis in the robbery of a business establishment in Brooklyn during which the business and the people present in the office were robbed and the manager killed. The proof established that the fatal shot which killed the victim was fired by O'Bleanis, and the proof of Cunningham's participation in the robbery was scanty and far from convincing. In order to convict Cunningham of felony murder, the jury would have been required to find that he was an actual participant with O'Bleanis in the robbery. The jury found Cunningham not guilty, and the State later attempted to prosecute him again on the charge of having committed the same robbery involved in the felony murder prosecution. The Supreme Court of New York held that the subsequent charge against Cunningham of robbery should be dismissed on the theory of collateral estoppel. In its opinion the court pointed out that collateral estoppel differs fundamentally from the concept of double jeopardy since the latter is a protection guaranteed by the constitution, whereas the former is essentially a procedural concept based upon a rule of evidence. It was the thinking of the court that before the doctrine of collateral estoppel comes into play, it must first be shown that the facts essential to be established in the case sub judice were fully tried and their adjudication necessary to the judgment rendered in an earlier trial.
*464 In the comparatively recent case of Ashe v. Swenson[8] the defendant Ashe was charged jointly with three codefendants in seven separate informations with having robbed six men who were engaged in a poker game being played in the basement room of a residence. All four defendants were first tried on one of the informations charging them with having robbed only one of the six victims. Proof of the robbery was fully established and its verity unassailed, but proof of defendant Ashe's identity as one of the robbers was weak and inconclusive. After completing its deliberations, the jury rendered a verdict finding Ashe "not guilty due to insufficient evidence". Several weeks later Ashe was again placed on trial with the other codefendants on a charge of having robbed another one of the six poker players at the same time and place and under the same circumstances involved in the first prosecution. A motion to dismiss the charge was filed by Ashe based upon his former acquittal, which motion was denied. Essentially the same evidence was introduced at the trial as was adduced at the first prosecution except that the testimony establishing Ashe's identity was stronger than it had been at the first trial. On the second trial Ashe was found guilty and sentenced to a term of imprisonment.
In granting habeas corpus and ordering that Ashe be discharged from custody, the Supreme Court declared that the question is no longer whether collateral estoppel is a requirement of due process but whether it is a part of the Fifth Amendment's guarantee against double jeopardy. The court held that if collateral estoppel is embodied in that guarantee, then its applicability in a particular case is no longer a matter to be left for state court determination within the broad bounds of "fundamental fairness" but is a matter of constitutional fact which must be decided through an examination of the entire record. The court held that, based upon its former decision in Benton v. Maryland,[9] the rule of collateral estoppel in criminal cases is embodied in the Fifth Amendment guarantee against double jeopardy and protects an acquitted defendant from having to run the gauntlet a second time. In defining the rule of collateral estoppel and its application as a legal postulate, the Supreme Court said:
"`Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in United States v. Oppenheimer, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161. * * *
"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to `examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry `must be set in a practical frame, and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel *465 in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal."
In reaching our decision we have endeavored to apply the criteria specified by the Supreme Court in Ashe. We have taken into account the pleadings, evidence, charge and other relevant matters contained in the records of the two trials to which appellant was subjected. Casting our inquiry in a practical frame within the contours of realism and rationality, we hold that whether appellant was the person who raped or sexually assaulted the victim involved in the felony murder case was a fact which the prosecution was necessarily required to prove beyond a reasonable doubt in order to justify a conviction. This fact was an issue which was necessarily tried and determined in appellant's favor by the jury in that case, and the State is collaterally estopped from relitigating that issue by prosecution under the second indictment for rape in the case sub judice.
To support the trial court's order denying appellant's motion to dismiss the indictment on the ground of collateral estoppel and former jeopardy, appellee conjectures that the jury might possibly have found in the felony murder trial that appellant raped the victim and left her in the vacant lot adjacent to the apartment building where the party was in progress, and that someone else came along and strangled her to death by tying a stocking tightly around her neck. Appellee speculates that under such a theory the jury might have found appellant not guilty of having killed the victim without reaching or deciding the question of whether he raped her. We are compelled to reject such theory because there is no evidence in the record which could reasonably support such a hypothesis. It is our view and we so hold that the prosecution of appellant for the offense of rape was interdicted in this case under the rule of collateral estoppel and former jeopardy. For this reason the trial court should have granted defendant's motion to dismiss the indictment when it was made prior to trial.
In concluding this opinion we feel compelled to express grave concern over the manner in which the prosecutions against appellant in these cases were handled. The charges of both rape and murder against appellant arose out of the same transaction or occurrence. The same witnesses testified both for the State and defendant in each case, and essentially the same evidence was adduced. Each trial consumed approximately five days during which the time of two busy trial judges, personnel of the state attorney's office and office of the public defender, and two different sets of jurors was monopolized. The cost imposed upon the County of Duval for payment of court reporters' fees for transcribing the trial proceedings in each case was substantial. No valid reason appears from the record why the two indictments against appellant were not consolidated for the purpose of trial so that one trial could have served to adjudicate both offenses. By having failed to follow such procedure, an enormous amount of manpower as well as expense has been needlessly expended at a time when the criminal trial dockets of our state are badly congested and the public is crying out for more efficient and economical methods of administering criminal justice in our state. Counsel representing the state and defendants in criminal cases should not be permitted to play games with each other for the purpose of seeing which one can manipulate the procedural course of the case in such manner as will secure the greatest advantage to himself. The State can ill afford the luxury of permitting counsel for either side to follow that procedural pattern which will enable him to take two bites at the apple in order to gain an advantage which he otherwise would not have. Absent compelling reasons to the contrary, the trial courts of this state should insist that where several indictments or informations are filed against the same defendant constituting separate offenses *466 growing out of the same transaction or occurrence, such indictments or informations be consolidated and disposed of in one trial.
The judgment of conviction appealed herein is reversed and the cause remanded with directions that appellant be discharged.
RAWLS, J., and MELVIN, WOODROW M., Associate Judge, concur.
NOTES
[1] F.S. § 782.04, F.S.A.

"The unlawful killing of a human being * * * when committed in the perpetration of or in the attempt to perpetrate any * * * rape, * * * shall be murder in the first degree. * * *"
[2] Roberts v. State, (Fla. 1964) 164 So.2d 817.
[3] Larry v. State, (Fla. 1958) 104 So.2d 352.
[4] Fla. Const., Art. 1, § 9.
[5] Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
[6] State ex rel. Glenn v. Klein, (Fla.App. 1966) 184 So.2d 904.
[7] People v. Cunningham (1970) 62 Misc.2d 515, 308 N.Y.S.2d 990.
[8] Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970).
[9] Benton v. Maryland, supra note 5.