ROBERTS, Chief Justice.
We here review by certiorari the decision of the District Court of Appeal, appearing as Brewer v. State of Florida, 253 So.2d 165, and which reported decision sets forth the history, factual background and legal conclusions. The District Court certified that the decision passed upon a question of great public interest, and we, therefore, have jurisdiction under Section 4(2), Article V, Constitution of Florida, F.S.A.
The District Court said, “Thus the sole question which we consider in this appeal is the retroactivity of the (U. S.) Supreme Court’s decision in Ashe v. Swenson [397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469].” The District Court affirmed the trial court which denied appellant’s post conviction motion to vacate his judgment and sentence on robbery charges. The original conviction had been affirmed by the District Court, the decision being reported at 224 So.2d 713.
On December 17, 1966, the Jack and Bess Drugstore in Jacksonville, Florida was robbed. Petitioner, defendant and appellant below, was tried and found not guilty by a jury on June 13, 1967 having been charged for taking the sum of $489.41 from Lucille Cunningham, a cashier at one of the registers in the store. A final judgment of not guilty was entered on the verdict. Within a few days thereafter, Brewer was again informed against for an offense of robbery of the same drugstore on the same date and same amount, but the new information alleged that the money was taken by force from Ruby Annette Williamson, another cashier in the drugstore. An information based on jeopardy at the commencement of the second trial was denied. After a verdict of guilty at the second trial, a motion for new trial or in the alternative a motion for judgment notwithstanding the verdict was denied, and on December 11, 1967, the petitioner-defendant was adjudged guilty and sentenced to twenty years in the Florida State Prison.
Subsequent to affirmance by the District Court of Appeal, First District, see Brewer v. State, 224 So.2d 713, post conviction proceedings were initiated by the petitioner-defendant who filed a motion to vacate *834 and set aside the judgment and sentence alleging that he had been placed twice in jeopardy for the same offense and the controlling factual issue in both trials was the identification of the robber. Relief in the post conviction proceedings was denied on December 3, 1969. Both the trial in which the petitioner-defendant was acquitted and the subsequent trial in which he was convicted and the affirmance on appeal occurred prior to the rendition of Ashe v. Swenson, supra. The State conceded that the case is analogous to the Ashe case and that if the principle of collateral estoppel is to be applied retroactively, then this case would be controlled by that decision.
We agree with the well reasoned opinion of the First District Court which held that Ashe is not applicable to judgments which had become final prior to the rendition of that decision. In absence of controlling precedent from the Supreme Court of the United States as to the retroactivity of Ashe, this Court will not extend the holding to apply to cases which have been completely disposed of prior to April 6, 1970, the date on which Ashe v. Swenson was decided.
In Ashe, the Supreme Court of the United States determined that collateral estop-pel is a part of the Fifth Amendment guarantee against double jeopardy and is fully applicable to the states through the Fourteenth Amendment, United States Constitution. Collateral estoppel means “. . . simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the parties in any future lawsuit. . . . Where a previous judgment of acquittal was based upon a general verdict . . . [the rule of collateral estoppel] requires a court to ‘examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.’ ” Ashe, 397 U.S. 436, at 443, 444, 90 S.Ct. 1189, at 1194. In that case the court concluded that the single conceivable issue in dispute before the jury was whether petitioner had been one of the three or four men who had interrupted a poker game and robbed all six participants. In the first trial, the jury by its verdict of acquittal of Ashe on the charge of robbing one of the poker players found that he had not been one of the robbers. Consequently, collateral estoppel made the second prosecution for robbery of a second poker player on the same occasion impermissible.
In Simpson v. Florida, 403 U.S. 384, 91 S.Ct. 1801, 29 L.Ed.2d 549 (1971) which involved circumstances remarkably similar to Ashe and to the case sub judice, the Supreme Court of the United States did extend the application of the Ashe doctrine to a situation where Ashe was rendered prior to adjudication of an appeal but after the adjudication of guilty and imposition of a thirty (30) year sentence by the trial court.
The First District Court has applied the principles espoused in Ashe, supra, and Simpson, supra, together in its decision of Eagle v. State, 249 So.2d 460 (Fla.App.1971), wherein the judgment of conviction entered in the second trial had not become final before Ashe was decided. In the instant case the judgment of conviction in the second trial had become final and the appeal concluded prior to the Ashe ruling.
On March 6, 1972, the Supreme Court of the United States in Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202, reaffirmed the guidelines which it had established for the determination of retroactivity and non-retroactivity.
“The criteria guiding resolution of the question of retroactivity of new constitutional rules of criminal procedure ‘implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retro *835 active application of the new standards.’ Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). We have given complete retroactive effect to the new rule, regardless of good faith reliance by law enforcement authorities or the degree of the impact on the administration of justice, where the ‘major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials . . .’ Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). Examples are the right to counsel at trial, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); on appeal, Douglas v. California, 372 U. S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); or at some forms of arraignment, Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961)
In Adams, the Supreme Court held that the doctrine in Coleman v. Miller, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), which was that a preliminary hearing is a critical stage of the criminal process at which the accused is entitled to counsel, is not to be given retroactive effect.
The rule now under consideration — collateral estoppel — does not raise serious questions about the accuracy of guilty verdicts in past trials. Therefore the three factors set down by the United States Supreme Court in Stovall v. Denno, supra, are determinative of the retroactivity of the Ashe v. Swenson doctrine. In Stovall, the court reiterated the same position that it had opined in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), that reliance on past decisions and impact on the administration of justice were controlling. Concluding that Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966), were not to be applied retroactively, the Supreme Court in Johnson, supra, 384 U.S. at 728, 729, 86 S.Ct. at 1778, stated:
“We here stress that the choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved. The right to be represented by counsel at trial, applied retroactively in Gideon v. Wainwright, supra, has been described by Justice Schaefer of the Illinois Supreme Court as ‘by far the most pervasive [o]f all of the rights that an accused person has.’ Yet Justice Bran-déis even more boldly characterized the immunity from unjustifiable intrusions upon privacy, which was denied retroactive enforcement in Linkletter [v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601], as ‘the most comprehensive of rights and the right most valued by civilized men.’ To reiterate what was said in Linkletter, we do not disparage a constitutional guarantee in any manner by declining to apply it retroactively. See 381 U.S., at 629, 85 S.Ct., at 1737.
“We also stress that the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved. Accordingly as Linkletter and Tehan [v. United State ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453] suggest, we must determine retroactivity ‘in each case’ by looking to the peculiar traits of the specific ‘rule in question.’ 381 U.S., at 629, 85 S.Ct. [1731] at 1737; 382 U. S., at 410, 86 S.Ct. [459] at 461.
“Finally, we emphasize that the question whether a constitutional rule of criminal procedure does or does not enhance the *836 reliability of the fact-finding process at trial is necessarily a matter of degree. We gave retroactive effect to Jackson v. Denno [378 U.S. 368, 12 L.Ed.2d 908], supra, because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature. On the other hand, we denied retroactive application to Griffin v. California [380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106], supra, despite the fact that comment on the failure to testify may sometimes mislead the jury concerning the reasons why the defendant has refused to take the witness stand. We are thus concerned with a question of probabilities and must take account, among other factors, of the extent to which other safeguards are available to protect the integrity of the truth-determining process at trial.”
See also: Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), Desist et al. v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971).
In Mackey, supra, the Supreme Court of the United States held that its previous decisions of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 716, 19 L.Ed.2d 906, which involved Fifth Amendment privilege against self-incrimination were not retroactively applicable. Therein, the court determined:
“The short of the matter is that Mar-chetti and Grosso raise not the slightest doubt about the accuracy of the verdict of guilt returned here. Under these circumstances, the principles represented by Elkanich and Williams [Williams v. United States (Elkanich v. United States), 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388], as well as by Tehan and Johnson, must control. For Tehan and Johnson indicate that even though decisions reinterpreting the Fifth Amendment may create marginal doubts as to the accuracy of the results of past trials, the purposes of those decisions are adequately served by prospective application.” Mackey, supra, 401 U.S. at 675, 91 S.Ct. at 1164, 28 L.Ed.2d at 410.
Applying the principles established by the Supreme Court in the above cited cases, we restate with approval the following excerpt from the decision of the First District Court of Appeal:
“Bearing in mind one of the main purposes to be served by the new constitutional rule announced in Ashe; that is, avoidance of successive trials arising out of the same criminal incident, the elements of which involve the same eviden-tiary facts, our holding that the rule in Ashe should be given prospective application only is justified by the knowledge that before the Ashe decision many prosecutors went to trial on an information charging one crime committed contemporaneously with other crimes, even though a star witness or an item of physical evidence which would have added to the State’s case was temporarily unavailable for use at trial. Under the rule prevailing prior to Ashe, it was permissible for a prosecutor to run the risk of acquittal on the trial of the first charge by going to trial ill prepared, knowing all the while that he could try the defendant on additional charges stemming from the same incident. This, of course, is the very practice that the Ashe decision was calculated to prevent.” Brewer v. State, supra, 253 So.2d at 167.
The principles relied on by the prosecutors and the courts before the Ashe decision which are antithetical to the doctrine of collateral estoppel announced in Ashe are best explicated in the decision of State v. Lowe, 130 So.2d 288 (Fla.App.1961). Therein, the principle that double jeopardy applies to the offense, not the act causing the criminal offense was controlling. The Second District Court of Appeals held in Lowe, supra, clearly in contradistinction to *837 Ashe, that where two or more persons are killed by a single act, there are as many separate and distinct offenses as there are persons killed by the unlawful act. To further illustrate the standards and principles relied upon in Florida prior to Ashe, supra, State v. Bowden, 154 Fla. 511, 18 So.2d 478 (1944) must be considered. Therein, this Court stated:
“In order to sustain a plea of former jeopardy it must be made to appear that there was a former prosecution in the same state for the same offense; that the same person was in jeopardy on the first prosecution; that the parties are identical in the same prosecution; and that the particular offense on the prosecution of which the jeopardy attached was such an offense as to constitute a bar to further prosecution.” State v. Bowden, supra, at 479-480.
See also: McHugh v. State, 160 Fla. 823, 36 So.2d 786 (1948), State v. Shaw, 219 So.2d 49 (Fla.App.1969), Lanier v. State, 226 So.2d 37 (Fla.App.1969).
These pre-Ashe principles no longer hold in light of the Ashe decision. We concur with the District Court’s determination in the instant case “. . . that the ‘reliance’ standard strongly supports prospec-tivity for a decision which elevates the federal procedural rule on collateral estop-pel to constitutional proportions.” The purpose of the collateral estoppel rule will be properly served and adequately implemented by granting prospective application only.
It is, therefore, our opinion and we hold that the decision by the Supreme Court of the United States in Ashe v. Swenson, supra, is not retroactive but prospective only in its application. We have carefully examined the decision under review and find it to be without error, so, the decision of the District Court of Appeal is approved and the writ of certiorari heretofore entered is discharged.
It is so ordered.
ERVIN, CARLTON, ADKINS and BOYD, JJ., concur.