615 So.2d 828 (1993)
Eric Wayne SPRIGGS, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1199.
District Court of Appeal of Florida, Fourth District.
March 17, 1993.
Richard L Jorandby, Public Defender, and Susan D. Cline, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Melynda Melear, Asst. Atty. Gen., West Palm Beach, for appellee.
EN BANC
FARMER, Judge
The issue faced today by the entire court is whether, in sentencing a defendant as a *829 habitual felony offender [HFO] under section 775.084(1)(a), Florida Statutes (1991), the trial court must make specific factual findings so qualifying the defendant when he has previously, expressly consented to an HFO sentence as part of a plea agreement. We now hold that the trial court is not obliged to do so and, thus, we recede from the panel decision to the contrary in Baskerville v. State, 606 So.2d 509 (Fla. 4th DCA 1992).
The facts here are straightforward and uncomplicated. Some four months after his arrest for an attempted purchase of cocaine, the court held a pre-plea conference and heard testimony from an officer who had previously arrested Spriggs. He testified that Spriggs had three burglary convictions stretching back to 1980 and 1981; and his latest convictions were from several burglaries and a robbery in 1986, from which he had been released from prison in August 1989. The officer testified, however, that he viewed the 1986 burglaries as the product of the influence of a girlfriend and his addiction to cocaine. That was followed by testimony from Spriggs's father and mother, who talked about his drug dependency and his latest attempts to rehabilitate himself. A guidance counselor testified to a job awaiting him and his need for drug therapy.
All of this evidence was presented by defendant's counsel as the basis for a plea discussion with the court. At this point the trial judge suggested that Spriggs make application to a particular drug rehabilitation program called "Fern House" and find out if he could be admitted. The court stated that he was considering letting the matter pend while Spriggs attempted successful completion of his therapy. He added pointedly: "If you screw up the program, you won't be able to say no one gave you any therapy  no one ever gave you a chance." After reciting what he had learned about Spriggs's prior convictions, he unmistakably added: "Otherwise, I don't see any reason why not to habitualize [sic] you, to tell you the truth."
Two days later, the parties were back before the same trial judge. The judge recited all of the salient facts learned at the hearing two days earlier and added that, after thinking the matter over, his initial comment about the sentence would still hold but that he would now simply require that the plea be made "straight up" but that actual sentencing would await the completion of the drug rehabilitation program. He said: "That would give him some incentive to do well at Fern House. If he screws up at Fern House we don't have any problem habitualizing him." [e.s.]
The prosecutor then asked if the court was familiar with his actual record, and the court made clear that it was. The prosecutor pointed to several other charges that were dropped at the convictions for the 1986 felonies and that Spriggs had previously been given a "break". She added that the guidelines called for a sentence of 12 to 17 years and that he could be "bumped up" to 17 to 22 years. The prosecutor then asked the court:
[PROSECUTOR] So, in other words, what you are saying is he is pleading straight up to the Court, he is agreeing to plead as a habitual offender to ten years in prison? That is the maximum he can get? He understands that. He pleads straight up, and you are going to impose sentence at some future date after he has had the opportunity to complete Fern House. * * *
THE COURT: What I am saying is if he successfully completes Fern House I won't sentence him as a habitual felony offender. * * *
You want to do that? That is really sticking your head 
[DEFENSE COUNSEL]: The thing is: what is your offer to him?
THE COURT: Plead straight up as a habitual offender, subjecting himself to the ten year sentence. I delay sentence; he goes off to Fern House. I am guaranteeing and telling him if he finishes Fern House successfully, and that is the six months down the road, that he won't be sentenced as a habitual felony offender. I might give him some jail time. I *830 don't know what I will do. That depends on how he does. [e.s.]
At that point, the court heard from the director of the drug program that he had interviewed and approved Spriggs and that he had entered the program on the previous afternoon. The judge then continued:
THE COURT: Well, you sit down and think about this. It is a gamble that you are taking, and it depends on how confident you are. You still have two choices: one, go to jail, and one, plead straight up. You know what is going to happen if you plead straight up. If you don't go, you are going to get 10 years.
After a recess, during which defendant and his counsel conferred, Spriggs returned to the courtroom and accepted the trial court's proposal. Once more, the trial judge restated the agreement:
THE COURT: Let me tell you. You agree to enter the guilty plea to the charge straight up. You agree that you could be sentenced to a maximum sentence of 10 years as a habitual offender and be released pending sentence to enter and successfully complete Fern House. If you successfully complete Fern House, I will not sentence you as a habitual offender. But you could be sentenced to 5 years in the Division of Corrections. But depending on how you do in Fern House you have it within your power to reduce that sentence. [e.s.]
Defendant agreed to the plea and signed a plea sheet to that effect.
While in the rehabilitation program, Spriggs was once more arrested and, again, for another attempted cocaine purchase. After his removal from the program, he was brought before a different judge to be sentenced. At this hearing, the state introduced evidence of the prior crimes committed by Spriggs in 1986, i.e., four convictions for burglary of a dwelling and one for robbery. The court sentenced Spriggs to 10 years as a HFO, explaining: "That is the exact sentence he knew he was going to get when he walked out of this courtroom the last time." Spriggs now appeals his HFO sentence, arguing that the trial court erred in failing to make the requisite findings.
Baskerville involved a slightly different twist in the agreed plea. The charge in that case was the sale of cocaine. Because the state there, as here, had previously filed the requisite HFO notice, the court asked the prosecutor what prior convictions were the basis for an HFO sentence. The prosecutor produced copies of convictions for burglary, attempted sale of cocaine, sale of cocaine and uttering a forgery. These copies were introduced into evidence without objection, and defense counsel actually stipulated to a factual basis for HFO sentencing.
In essence, the quid pro quo for the defense plea in Baskerville was a shorter HFO sentence, a release from jail after the plea and sentencing to be held one week later. If he appeared one week later for sentencing and had committed no new offense, then his sentence would be 7 years as a HFO. If he failed to appear or had committed a new crime, however, then his sentence would be 30 years as a HFO. In other words, he faced an HFO sentence in any case, and he had already stipulated to the factual basis for it. There was no question that, as here, the plea was entered knowingly and voluntarily. The Baskerville panel nevertheless remanded for resentencing, explaining that the trial court's failure to make specific HFO factual findings required a reversal. 606 So.2d at 510.
The provisions dealing with the application and uses of HFO sentencing are found in section 775.084, Florida Statutes (1991). Subsection (1)(a) generally provides that the defendant must have been earlier convicted of any combination of 2 or more felonies in Florida or other qualifying offenses, that the current felony have been committed within 5 years of the last conviction or release from incarceration, and that he not have been pardoned, or had the conviction set aside, for any felony or qualifying offense. Subsection (3) requires a separate proceeding for the HFO determination and prescribes procedure, including a presentence report, prior written notice on the defendant, and the presentation of *831 evidence in open court. Subsection (3)(d) then provides:
(d) Each of the findings required as the basis for such sentence shall be found to exist by a preponderance of the evidence and shall be appealable to the extent normally applicable to similar findings.
The statute has been construed by our supreme court to require the trial court to make specific factual findings in support of its determination to sentence a defendant as a HFO. Walker v. State, 462 So.2d 452 (Fla. 1985). If the required findings are made on the record at a reported hearing, then they need not be reduced to writing. Parker v. State, 546 So.2d 727 (Fla. 1989). In Parker, the court made clear that the requirement for written findings in other sentencing situations  such as the death penalty, sentencing a juvenile as an adult, or a guidelines departure sentence  grows out of statutory language in the penalty provision adopted by the legislature. 546 So.2d at 728-29. In Van Bryant v. State, 602 So.2d 582 (Fla. 4th DCA 1992), quashed, 613 So.2d 474 (Fla. 1993),[1] we ourselves took these decisions one step further and required record findings even where a defendant had made no suggestion or claim of pardon or a vacation of the judgment of conviction, relying on the First District's decision to that effect in Anderson v. State, 592 So.2d 1119 (Fla. 1st DCA 1991), quashed, 613 So.2d 465 (Fla. 1993).
Before Baskerville, we had not discussed an HFO sentence arising expressly from a plea agreement that provided for such enhanced punishment.[2] The First District was the first to do so in Jefferson v. State, 571 So.2d 70 (Fla. 1st DCA 1990). Like the defendant in our case, Jefferson expressly agreed to be sentenced as an HFO as part of his plea agreement, but argued on appeal that the trial court had erred in so sentencing him without first finding that he met the section 775.084 criteria. In affirming the trial court's omission of such findings, the First District said:
We find nothing in this statute implying that a defendant is not free to waive the procedural rights set forth therein, i.e., his right to a separate hearing at which he is accorded the rights of confrontation, cross-examination, and representation by counsel. Although we are not aware of any decisions which have specifically addressed the issue at bar, we are aware that in other contexts, defendants have been recognized as having the option to waive numerous substantive rights in the criminal justice area, *832 even though waiver is not expressly provided by statute.
571 So.2d at 71.
Accord Greenlee v. State, 591 So.2d 310 (Fla. 2d DCA 1991); see also Basilisco v. State, 593 So.2d 588 (Fla. 1st DCA 1992) (defendant's knowing waiver of section 775.084 procedural protections by plea agreement for HFO sentence precludes post-conviction relief alleging failure to follow the statutory requirements); Likely v. State, 583 So.2d 414 (Fla. 1st DCA 1991) (same); Caristi v. State, 578 So.2d 769 (Fla. 1st DCA 1991) (same). But cf. Smith v. State, 608 So.2d 567 (Fla. 1st DCA 1992) (plea arrangement in which defendant agreed that prosecutor would recommend HFO sentence is not a waiver of procedures required by section 775.084); Harper v. State, 605 So.2d 994 (Fla. 5th DCA 1992) (same).[3]
The criminal justice landscape is thickly planted with rights and protections which are often forborne by voluntary and knowing waivers. Suspects may give up the right to silence and counsel and confess at an interrogation. Defendants may waive trial by jury. Their counsel may forgo cross-examination of one, or more, or all, witnesses. Objections to evidence and argument may be shunned. The defendant may take the stand and testify. The right of appeal may be abandoned. And any one of these might form the essential basis for conviction or an enhanced sentence.
It would be a surreal landscape indeed that included the above common waivers but cut down the kind involved here. If those may be waived, it hardly seems possible that the rather mechanical recitation of the obvious at a post-plea sentencing hearing cannot equally be forgone. There is nothing so uniquely intrinsic about a statutory right to these factual findings that makes them so categorically different from the above that they alone may not be dispensed with. We thus agree with the views expressed in Jefferson.
No one contends that the voluntary and knowing plea made by Spriggs was somehow involuntary or unknowing. No one suggests that he was not fully informed by his counsel  or, for that matter, by the trial judge himself  of the rights he was abandoning and the possibilities and consequences of failure. Indeed, his waiver could not be more unmistakable. It could hardly be clearer that the plea included HFO enhancement of 10 years for any failure in the drug program or for any new criminal offense. And surely it cannot have escaped anyone's attention that the plea itself was initiated by the defendant, who himself brought the witnesses into court to establish that his past criminal record was the product of his dependency on cocaine and that he deserved a chance to rid himself of the scourge and avoid a long stretch in prison in the process.
Spriggs does not contend on this appeal that he does not qualify for HFO enhancement. He does not argue, e.g., that he had been pardoned, or that one or more of his prior convictions have since been set aside. He does not assert that something occurring since the plea renders any of the plea proceedings invalid or his prior criminal record insufficient. His sole contention is that, after having been given the chance for which he brought on the plea in the first place and failing, his sentence should now be set aside for a formalistic and ritual incantation of facts he himself adduced simply to show that the chance should be afforded to him.
In light of the facts in this case, we believe that remanding for the trial court to make a mechanical recitation of the section 775.084 findings would be an empty gesture, not to mention a waste of judicial resources. Neither Spriggs nor anyone else has demonstrated why such a reversal *833 is necessary to do essential justice, or is required by the actual text of the statute or the decisions construing it. No one has come forth with an explanation as to why such vacant formalism is required to vindicate any procedural or substantive right, or reasonable expectation. The argument is simply that it is required.
We do not agree. We hereby recede from anything in Baskerville to the contrary.[4] We now hold that a defendant may knowingly and voluntarily waive, in a plea agreement or otherwise, the right to express findings under section 775.084(3). Appellant's sentence, as well as his conviction, is hereby
AFFIRMED.
GLICKSTEIN, C.J., and ANSTEAD, LETTS, HERSEY, DELL, GUNTHER, STONE, WARNER, POLEN and KLEIN, JJ., concur.
NOTES
[1] In State v. Rucker, 613 So.2d 460 (Fla. 1993), the supreme court decided that the failure to make specific factual findings, that the prior felony convictions had not been pardoned or set aside, could be harmless error. Our Van Bryant decision was quashed on the basis of Rucker. The issue in these cases is quite unlike the one we consider here, which involves a knowing and voluntary waiver of HFO findings. There was no contention that such a waiver occurred in Rucker or Van Bryant.
[2] As an aside, we note some prior decisions of our court which affirmed without opinion and cited Jefferson v. State, 571 So.2d 70 (Fla. 1st DCA 1990). See Chalk v. State, 600 So.2d 1316 (Fla. 4th DCA 1992) (Anstead, J., concurring); Thompson v. State, 598 So.2d 205 (Fla. 4th DCA 1992); Passard v. State, 584 So.2d 240 (Fla. 4th DCA 1991); cf. Fambro v. State, 581 So.2d 199 (Fla. 4th DCA 1991) (defendant knowingly agreed to possibility of HFO sentence as condition of plea arrangement and could not therefore withdraw guilty plea after being so sentenced), rev. denied, 591 So.2d 181 (Fla. 1991). The only issue discussed in Jefferson is the same one we consider in this en banc opinion. It is thus a reasonable inference of the bench and bar that we have sub silentio already adopted the Jefferson view.

In Department of Legal Affairs v. District Court of Appeal, Fifth District, 434 So.2d 310 (Fla. 1983), the court held that a per curiam decision without opinion has no precedential value, but we note the following passage from that opinion:
The situation is slightly different in reference to calling a court's attention to one of its own unwritten decisions. Usually, however, it would not be improper for counsel, in an effort to persuade a court to adopt a certain position, to refer to such a decision and thereby suggest to the court how it previously viewed the proposition. That court has the records of its own decisions and the judges have the opportunity to discuss such cases collegially.
434 So.2d at 313. No one suggests that we could thus rest our decision here on that rationale, and we prefer to confront the issue directly.
[3] In Robinson v. State, 605 So.2d 500 (Fla. 1st DCA 1992), the court concluded that appellant had waived his right to the requisite findings under section 775.084 where his defense counsel, in responding to the state's notice of intent to seek HFO sentencing, stated: "We're not quarreling with that qualification." 605 So.2d at 502. Similarly, in Baxter v. State, 599 So.2d 721 (Fla. 2d DCA 1992), the Second District determined that the appellant had waived the issue because he conceded at sentencing that he had the requisite prior felony record to qualify as a HFO.
[4] We are aware of the following cases and note their inapplicability. In Williams v. State, 608 So.2d 887 (Fla. 1st DCA 1992), the court said: "No sentence was agreed upon in exchange for appellant's plea." This is obviously distinguishable from our case where Spriggs agreed to be sentenced as a HFO as part of the plea arrangement. In Trujillo-Pentate v. State, 609 So.2d 72 (Fla. 1st DCA 1992), cert. granted (December 16, 1992) there is no indication that a plea agreement played a role in the court's reasoning. That opinion cited Jones v. State, 606 So.2d 709 (Fla. 1st DCA 1992), where the court held that the failure to contest evidence of prior convictions is not the same as admitting that the convictions have not been set aside or that defendant had not been pardoned.