645 So.2d 91 (1994)
The STATE of Florida, Appellant,
v.
Larry WILL, Appellee.
No. 93-2956.
District Court of Appeal of Florida, Third District.
November 9, 1994.
*92 Robert A. Butterworth, Atty. Gen., and Mark Rosenblatt, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Ken Lange, Sp. Asst. Public Defender, for appellee.
Before HUBBART, COPE and GODERICH, JJ.
COPE, Judge.
The State appeals the trial court's order granting postconviction relief under Florida Rule of Criminal Procedure 3.850. We reverse.
In 1991 Larry Will, defendant below, entered a negotiated plea of guilty to multiple criminal charges and was sentenced to a term of eighteen years as a habitual felony offender.[1] In 1992 defendant filed a motion pursuant to Florida Rule of Criminal Procedure 3.850 seeking to set aside his plea. After an evidentiary hearing the trial court *93 set aside the plea, convictions, and sentences. The State has appealed.

I
In the present case the defendant seeks to set aside a plea where the judgment and sentence have become final. In order to obtain postconviction relief, the defendant must satisfy a high burden.
Florida Rule of Criminal Procedure 3.172 governs the acceptance of guilty pleas. Rule 3.172(i) states, "Failure to follow any of the procedures in this rule shall not render a plea void absent a showing of prejudice." Similarly, the Florida Supreme Court has held that after sentence is imposed, a plea is not to be vacated unless there is a showing of prejudice or manifest injustice. Williams v. State, 316 So.2d 267, 273-75 (Fla. 1975); see also Freber v. State, 638 So.2d 140, 141 (Fla. 4th DCA 1994); Suarez v. State, 616 So.2d 1067, 1068 (Fla. 3d DCA 1993).

II
Defendant asserted, inter alia, that the plea should be set aside because there was no on-the-record waiver of the right to a habitual offender hearing under section 775.084, Florida Statutes (1989).[2] The trial court agreed. The court's written order states that the defendant "could not enter a plea and be sentenced as an Habitual Offender pursuant to Florida Statute 775.084 without a [habitual offender] hearing or without a specific waiver of hearing recorded in the plea colloquy... ." We respectfully disagree.
The principal purpose of a hearing under the habitual offender statute is to make findings establishing that the defendant is a habitual offender. § 775.084(3)(d), Fla. Stat. (1989). The Fourth District Court of Appeal has held that where a defendant expressly consents to a habitual offender sentence as part of a plea bargain, it is unnecessary for the trial court to make the statutory habitual offender findings. Spriggs v. State, 615 So.2d 828, 829 (Fla. 4th DCA 1993) (en banc); accord Bell v. State, 637 So.2d 941, 942 (Fla. 2d DCA 1994). That being so, no useful purpose would be served by holding the habitual offender hearing, or obtaining an on-the-record waiver of the habitual offender hearing.[3]See Greenlee v. State, 591 So.2d 310, 310-311 (Fla. 2d DCA 1991). But see Harper v. State, 605 So.2d 994, 995 (Fla. 5th DCA 1992).[4]
Assuming arguendo that it was necessary to obtain an on-the-record waiver, or to conduct a habitual offender hearing, defendant would still be entitled to no relief. In order to obtain postconviction relief, defendant must show clear prejudice or manifest injustice. Where a defendant agrees to a specific sentence as a habitual offender, and that sentence is imposed, a deficiency in the plea colloquy, or an absence of a habitual offender finding, does not constitute prejudice or manifest injustice.
It would be a different matter entirely if defendant did not meet the statutory criteria for a habitual offender. He would of course be entitled to relief if he showed that he did not qualify as a habitual offender because such a showing would clearly meet the manifest injustice standard of Williams. See 316 So.2d at 274-75; Marshall v. State, 623 So.2d 1230 (Fla. 1st DCA), appeal dismissed, 626 So.2d 207 (Fla. 1993); Watkins v. State, 622 So.2d 1148 (Fla. 1st DCA 1993); Brown v. State, 609 So.2d 730 (Fla. 1st DCA 1992), review denied, 618 So.2d 1369 (Fla. *94 1993). Defendant made no such argument below, nor is such a contention advanced here. See Spriggs, 615 So.2d at 832.[5] Defendant is entitled to no relief on this theory.

III
Defendant argues alternatively that the plea colloquy is facially inadequate under Ashley v. State, 614 So.2d 486 (Fla. 1993). Ashley states that in taking a habitual offender plea, "[t]he defendant should be told of ... the fact that habitualization may affect the possibility of early release through certain programs... ." 614 So.2d at 490 n. 8.[6] Defendant argues that the trial court should have advised him that a habitual offender is ineligible for basic gain time.
At the evidentiary hearing defendant testified that he did not know about a habitual offender's ineligibility for basic gain time, and therefore that he was prejudiced by the absence of that information. Defendant's original trial counsel[7] testified that he specifically advised defendant regarding the gain-time consequences of the habitual offender plea.[8] The trial court's remarks at the conclusion of the hearing strongly suggest that the court believed former defense counsel and did not believe defendant. However, because the plea was set aside on other grounds there was no specific finding announced on whether defendant knew the gain time consequences of habitualization.

A
As a preliminary matter, we are in doubt about the correctness of defendant's reading of Ashley. Ashley requires advice in the plea colloquy that "habitualization may affect the possibility of early release through certain programs... ." 614 So.2d at 490 n. 8. It is not clear that basic gain time is an early release program as contrasted with the conditional release and control release programs. See §§ 947.1405, 947.146, Fla. Stat. (1993). We need not now decide whether Ashley's "certain programs" includes basic gain time, since we conclude that defendant may not rely on Ashley in any event.

B
Defendant was sentenced in 1991. Ashley was announced in 1993.[9] The threshold question is whether the quoted portion of Ashley (the new requirement to advise of "the fact that habitualization may affect the possibility of release through certain programs") applies retroactively to convictions that have become final. We conclude that this portion of Ashley is not retroactive.
At the time of defendant's plea in 1991 the settled law was set forth in State v. Ginebra, 511 So.2d 960 (Fla. 1987):
It is clear under both state and federal decisions that the trial court judge is under no duty to inform a defendant of the collateral consequences of his guilty plea. Florida Rule of Criminal Procedure 3.172(c), and its counterpart Federal Rule of Criminal Procedure 11(c), set forth those areas which the trial court judge must inquire of the defendant before accepting a guilty plea. The trial judge's *95 obligation to ensure that the defendant understands the direct consequences of his plea has been consistently interpreted to encompass only those consequences of the sentence which the trial court can impose. See, e.g., Michel v. United States, 507 F.2d 461, 465 (2d Cir.1974).
511 So.2d at 960-61 (footnotes omitted; emphasis added).[10]
Ginebra states that Rule 3.172(c) sets forth the required areas of inquiry when the trial court accepts a plea. The Rule does not enumerate the collateral consequence of loss of eligibility for early release programs as an area to be covered when accepting habitual offender pleas.
Ginebra also indicates that the judge's obligation is to ensure that the defendant understands the direct consequences of the plea. Ginebra states that a direct consequence of a plea encompasses "only those consequences ... which the trial court can impose." 511 So.2d at 961. Loss of basic gain time is not a consequence which the trial court imposes. Accordingly, loss of eligibility for basic gain time is a collateral consequence of a plea. See id.; Simmons v. State, 611 So.2d 1250, 1252-53 (Fla. 2d DCA 1992); Levens v. State, 598 So.2d 120, 121 (Fla. 1st DCA 1992); Wright v. State, 583 So.2d 399, 400 (Fla. 1st DCA 1991); see also Blackshear v. State, 455 So.2d 555, 556 (Fla. 1st DCA 1984) (forfeiture of accumulated gain time). But see Wilcox v. State, 638 So.2d 527 (Fla. 5th DCA 1994) (post-Ashley decision; suggesting that ineligibility for basic gain time is a direct consequence of a plea); Setzer v. State, 575 So.2d 747 (Fla. 5th DCA 1991) (pre-Ashley decision; same). See generally Polk v. State, 405 So.2d 758, 761-62 (Fla. 3d DCA 1981) (enumerating collateral consequences of conviction, including loss of good time).
Ashley changed the law relating to pleas by adding a requirement for the trial court to advise the defendant of "the fact that habitualization may affect the possibility of early release through certain programs... ." 614 So.2d at 490 n. 8.[11] In order to determine if this change operates retroactively to convictions that have become final, we must examine the standards set forth in Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980); see Williams v. State, 421 So.2d 512 (Fla. 1982) ("[T]he standards established in Witt are fully applicable to noncapital cases.").
Under Witt, a Florida Supreme Court decision will be retroactive only if the change in law "is constitutional in nature, and ... constitutes a development of fundamental significance." 387 So.2d at 931. Ashley is not a constitutional change in law, nor is it fundamental in the Witt sense. Ashley instead represents an evolutionary refinement in the law relating to plea colloquies, a development which does not satisfy the Witt standards for retroactive treatment.[12]See Witt *96 v. State, 387 So.2d at 926, 929-31; Williams v. State, 421 So.2d at 514-15. We conclude, therefore, that the defendant is not entitled to rely on the cited portion of Ashley. We also conclude that under pre-Ashley law, ineligibility for basic gain time was a collateral consequence of the plea, which was not required to be covered in the plea colloquy. Consequently we need not remand on this issue to resolve the conflict in testimony between defendant and his counsel who negotiated the plea.

IV
Defendant makes a further alternative argument that he is entitled to withdraw his plea because he did not agree to a habitual offender sentence. Prior to trial, the State had filed two notices of habitualization. At the time of jury selection, there was plea negotiation. It is undisputed that the State made an offer to the defendant of a plea to twenty years as a habitual offender.
According to defendant's trial counsel, there was further negotiation and ultimately a mutual agreement on an eighteen year sentence as a habitual offender. Defense counsel testified that the consequences of habitualization were fully explained.
Defendant agreed that the State's offer was for twenty years as a habitual offender. He testified, however, that while he agreed to a sentence of eighteen years, he thought he was agreeing to a sentence of eighteen years straight time.
Ordinarily, the terms of the agreement could be readily ascertained from the face of the plea colloquy. However, evidently the terms of the plea colloquy were outlined off the record. When the plea colloquy began, the overall terms of the plea were not repeated on the record. Instead, the trial court proceeded through the other terms of the plea colloquy. In imposing sentence, the trial court stated in one place that the sentence was eighteen years, and in another place, that the sentence was eighteen years as a habitual offender.
After hearing the testimony at the Rule 3.850 hearing, the trial court's remarks strongly suggest that he did not believe the defendant's version of the facts and did believe defense counsel's version of the facts. However, the trial court decided to set aside the plea on other grounds and did not expressly make a finding resolving the conflict in testimony. If defendant did not agree to a habitual offender disposition, then he would be entitled to postconviction relief.
Although we are reasonably confident of the trial court's view of the facts adduced at the Rule 3.850 hearing, in an abundance of caution we remand for a specific finding on the defendant's claim that he did not agree to a habitual offender disposition.[13]
The order under review is reversed and the cause remanded for further proceedings consistent herewith.
NOTES
[1] The charged offenses occurred in 1990.
[2] The 1989 version of the statute was in force at the time of the defendant's offenses in 1990.
[3] Another purpose of a habitual offender hearing is to allow the trial court to decide "[i]f ... imposition of sentence ... is not necessary for the protection of the public." § 775.084(4)(c), Fla. Stat. (1989). That portion of the statute, and the requirement for a presentence investigation, have no relevance where the defendant has agreed to a specific term of years as a habitual offender.
[4] Harper was decided before State v. Rucker, 613 So.2d 460 (Fla. 1993), while Spriggs and Bell were decided after. Rucker commented that a remand for more specific findings on an undisputed point "would be mere legal churning." 613 So.2d at 462. Accord Herrington v. State, 643 So.2d 1078 (Fla. 1994). Harper relied on Johnson v. State, 597 So.2d 353 (Fla. 1st DCA 1992), but it does not appear in Johnson that the defendant had specifically agreed to a habitual offender disposition. See 597 So.2d at 354.
[5] In fact, the trial court commented that defendant has fourteen prior felony convictions and clearly qualifies as a habitual offender.
[6] This portion of Ashley states:

In sum, we hold that in order for a defendant to be habitualized following a guilty or nolo plea, the following must take place prior to acceptance of the plea: 1) The defendant must be given written notice of intent to habitualize, and 2) the court must confirm that the defendant is personally aware of the possibility and reasonable consequences[8] of habitualization.
[8] The defendant should be told of his or her eligibility for habitualization, the maximum habitual offender term for the charged offense, the fact that habitualization may affect the possibility of early release through certain programs, and, where habitual violent felony offender provisions are implicated, the mandatory minimum term. As noted in the rule, "[c]ounsel for the prosecution and the defense shall assist the trial judge in this function." Fla.R.Crim.P. 3.172(a).
Id. at 490.
[7] Other counsel was appointed to assist defendant at the Rule 3.850 hearing.
[8] The file also reflects that trial counsel sent defendant a copy of the habitual offender statute prior to trial.
[9] Ashley had been announced prior to the Rule 3.850 hearing.
[10] Ginebra held that deportation is a collateral consequence of a plea and that failure to advise regarding possible deportation is not a basis to set aside a plea. Id. at 962. Subsequently Florida Rule of Criminal Procedure 3.172 was amended to require advice to defendants regarding deportation consequences. Fla.R.Crim.P. 3.172(c)(viii) (as amended 1989).
[11] The remainder of Ashley applies pre-existing law. Ashley held that written notice of habitualization must be given prior to acceptance of the plea. Id. at 490. This was required by the habitual offender statute itself. Id.; see § 775.084(3)(b), Fla. Stat. (1989). Ashley's requirement that the plea colloquy advise the defendant of the maximum habitual offender term and, in the case of habitual violent felony offenders, the mandatory minimum sentence, 614 So.2d at 490, is a requirement already explicitly set forth in Rule 3.172(c)(1). 614 So.2d at 488.
[12] Witt states, in part:

[W]e note that the essential considerations in determining whether a new rule of law should be applied retroactively are essentially three: (a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of a retroactive application of the new rule. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Brewer v. State, 264 So.2d 833, 834 (Fla. 1972); State v. Steinhauer, 216 So.2d 214, 219 (Fla. 1968), cert. denied, 398 U.S. 914, 90 S.Ct. 1698, 26 L.Ed.2d 79 (1970).
387 So.2d at 926. Plainly the extensive reliance on the old rule and adverse effect on completed pleas militate against retroactive application of the "possibility of early release" portion of Ashley. It would be highly prejudicial to the administration of justice to reopen numerous habitual offender pleas on the basis of a change in law announced after the pleas were taken.
[13] We reiterate that it is only upon the peculiar facts of the present case that an evidentiary hearing was warranted on this point.