GRIFFIN, Judge,
dissenting.
I respectfully dissent. This case is more like Grasso v. State, 639 So.2d 152 (Fla. 5th DCA 1994) than like Thompson v. State. In Thompson, the court found there to be a defect in Judge Watson’s plea agreement form in that it failed to adequately inform the defendant of the consequences of his plea as required by Ashley v. State.
Ashley requires that the defendant must be made aware prior to his plea that either the State intends to seek habitual offender treatment or that the court intends on its own to consider habitual offender treatment at sentencing. The previously quoted provision in the form negotiated plea does not suggest that the defendant will be considered for habitual offender treatment; it merely informs him generally as to the maximum sentence if he is so considered. [Emphasis added.]
Thompson v. State, 638 So.2d 116 (Fla. 5th DCA 1994).
Here, in addition to the defendant’s execution of the plea form, the following transpired as the court was entertaining the plea of the defendant and two others:
THE COURT: But is it your desire to plead guilty to two counts of sale of a counterfeit controlled substance, both third-degree felonies, and one count of attempted unlawful possession of a controlled substance, a first-degree- misdemeanor?
DEFENDANT SMITH: Yes, sir.
THE COURT: And that is your signature on the plea agreement?
DEFENDANT SMITH: Yes, sir.
THE COURT: Before you signed the agreement, did you read it over thorough-iy?
******
DEFENDANT SMITH: Yes, sir.
THE COURT: Did you have an adequate opportunity to ask questions of your attorney about the agreement before you signed it?
[[Image here]]
THE COURT: Mr. Smith?
DEFENDANT SMITH: Yes, sir.
THE COURT: And did you understand the agreement before you signed it?
* * * * * *
DEFENDANT SMITH: Yes, sir.
⅝ ‡ ‡ ‡ ‡ ‡
*71 THE COURT: And do you have any questions about the agreement at this time?
⅜ ⅜ ⅜ ⅜ ⅝ ⅜
DEFENDANT SMITH: No, sir.
THE COURT: Are all of your representations in this agreement accurate as of this moment?
# ⅜ ⅜: ⅜ ‡ ⅜
DEFENDANT SMITH: Yes, sir.
THE COURT: And, Mr. Blackwell, do you understand that as a result of this plea, that your sentencing exposure under the statute is up to 15 years in the state prison?
DEFENDANT BLACKWELL: Yes, sir.
THE COURT: And do you understand that a notice for a hearing to be conducted to determine whether or not you’re habitual felony offender can be issued prior to sentencing; and that if it were determined that you were found to be an habitual felon, that it means if it were determined that you had two or more prior felony convictions prior to today’s date, that you could be found to be a habitual felony offender and your sentencing exposure would double up to 30 years?
Do you understand that?
DEFENDANT BLACKWELL: Yes, sir.
THE COURT: And that if in fact that were done and you were sentenced, that you would then not receive any entitlement to any basic gain time? Do you understand that?
DEFENDANT BLACKWELL: Yes, sir.
THE COURT: Mr. Smith, do you understand that under the statute as a result of the entry of the pleas to the two third-degree felonies and the first-degree misdemeanor, that your sentencing exposure is up to 11 years in the state prison?
DEFENDANT SMITH: Yes, sir.
THE COURT: And that likewise, a notice could be issued for the conducting of a separate hearing prior to the sentencing, and if a determine were made at that hearing that you had two or more prior felony convictions your sentencing exposure would double on the felonies and would mean sentencing exposure of up to 20 years on the felonies?
DEFENDANT SMITH: Yes, sir.
THE COURT: And that likewise, you wouldn’t be entitled to any basic gain time or any such habitual sentence? Do you understand that?
DEFENDANT SMITH: Yes, sir.
I think this explanation meets the requirements of Ashley and Thompson.