614 So.2d 486 (1993)
Thomas ASHLEY, Petitioner,
v.
STATE of Florida, Respondent.
No. 79159.
Supreme Court of Florida.
February 25, 1993.
*487 James B. Gibson, Public Defender and Daniel J. Schafer, Asst. Public Defender, Daytona Beach, for petitioner.
Robert A. Butterworth, Atty. Gen. and Anthony J. Golden, Asst. Atty. Gen., Daytona Beach, for respondent.
SHAW, Justice.
We have for review Ashley v. State, 590 So.2d 27 (Fla. 5th DCA 1991), in which the court certified conflict with Inmon v. State, 383 So.2d 1103 (Fla.2d DCA), review denied, 389 So.2d 1111 (Fla. 1980). We have jurisdiction. Art V, § 3(b)(4), Fla. Const. We quash the decision in Ashley.
Based on an incident that took place October 29, 1989, Ashley was charged with battery on a correctional officer, a third-degree felony. On July 24, 1990, he entered a plea of nolo contendere, which was accepted, and three days later the State filed notice of intent to seek enhanced punishment as an habitual felony offender. See § 775.084, Fla. Stat. (1989). Ashley unsuccessfully sought to withdraw his plea on August 29, and was sentenced October 31, 1990, to six years' imprisonment as an habitual felony offender.[1] On appeal, he argued that his sentence was illegal because prior to entry of his plea the State failed to serve written notice of intent to habitualize. The district court affirmed, but certified conflict with Inmon, wherein the court indicated pre-plea notice is required for habitualization.
Ashley argues that notice is required prior to acceptance of a guilty or nolo plea under both Florida Rule of Criminal Procedure 3.172 and the habitual offender statute, section 775.084, Florida Statutes (1989). Failure to provide notice, he contends, violates the plain language of rule 3.172(c)(1), which requires that the defendant understand the "maximum possible penalty provided by law" before the court may accept his or her plea. Further, to read the habitual offender statute as the district court and State propose, i.e., that notice prior to entry of a plea is unnecessary as long as sufficient notice is given prior to sentencing, effectively strikes the words "prior to entry of a plea" from the statute. The State counters that no notice is required under the rule since habitualization is a collateral, not direct, consequence of the plea. The State also posits that the express purpose of the notice provision of the statute is to give the defendant time to prepare an argument against habitualization *488 and as long as sufficient notice is given prior to sentencing this purpose is fulfilled. We disagree.
In Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court noted that "[a] plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." A number of important federal rights are implicated in the plea process:
Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. We cannot presume a waiver of these three important federal rights... .
Id. 395 U.S. at 243, 89 S.Ct. at 1712 (citations omitted). Before a trial judge can accept a plea of guilty or nolo contendere, there must be "an affirmative showing that it was intelligent and voluntary," id. at 242, 89 S.Ct. at 1711, for "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 243-44, 89 S.Ct. at 1712.
In keeping with Boykin, this Court has ruled that in order for a plea to be knowing and intelligent the defendant must understand the reasonable consequences of the plea, including the maximum penalty that may be imposed:
Second, a defendant must understand the nature of the charge and the consequences of his plea. The purpose of this requirement is to ensure that he knows what particular act he has committed, what law he has violated, and what maximum penalty may be imposed for the offense with which he is charged.
Williams v. State, 316 So.2d 267, 271 (Fla. 1975). See also Koenig v. State, 597 So.2d 256 (Fla. 1992). This ruling was memorialized two years later in rule 3.172, which now reads:
[3.172] (a) Voluntariness; Factual Basis. Before accepting a plea of guilty or nolo contendere the trial judge shall be satisfied that the plea is voluntarily entered and that there is a factual basis for it. Counsel for the prosecution and the defense shall assist the trial judge in this function.
... .
(c) Determination of Voluntariness. Except when a defendant is not present for a plea ... the trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he or she understands:
(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law. ...
In re Amendments to the Fla. Rules of Criminal Procedure, 606 So.2d 227, 263 (Fla. 1992). Accordingly, before a court may accept a guilty or nolo plea it must determine on the record that the defendant is aware of the "maximum possible penalty provided by law" that may be imposed for the crime.
Maximum penalties for most felonies are determined according to the sentencing guidelines, which establish recommended (and now, permitted) ranges of punishment. See § 921.001, Fla. Stat. (1989); Fla. R.Crim.P. 3.701. A court may depart from these ranges only under exceptional circumstances, with adequate legal justification. Id. Both guidelines maximums and departure sentences are themselves superceded by statutory maximums, which cannot be exceeded.[2] As a general rule, guidelines maximums fall short of statutory maximums.
*489 As an alternative to guidelines sentencing, a court may impose an enhanced sentence pursuant to the habitual offender statute in those cases where the defendant meets certain requirements concerning prior convictions. See § 775.084, Fla. Stat. (1989). Maximum sentences under this statute are roughly double the standard statutory maximums.[3] In addition to authorizing longer overall terms, the statute also ensures that defendants will serve a greater portion of their sentences by eliminating the possibility of early release through parole, or accrual of basic or meritorious gain-time or provisional credits. §§ 775.084, 944.275, 944.277, Fla. Stat. (1989). Further, habitual violent felony offenders receive mandatory minimum terms.[4]
Because habitual offender maximums clearly constitute the "maximum possible penalty provided by law"  exceeding both the guidelines and standard statutory maximums  and because habitual offender sentences are imposed in a significant number of cases, our ruling in Williams and the plain language of rule 3.172 require that before a court may accept a guilty or nolo plea from an eligible defendant it must ascertain that the defendant is aware of the possibility and reasonable consequences of habitualization. To state the obvious, in order for the plea to be "knowing," i.e., in order for the defendant to understand the reasonable consequences of his or her plea, the defendant must "know" beforehand that his or her potential sentence may be many times greater what it ordinarily would have been under the guidelines and that he or she will have to serve more of it. We note that this view is endorsed by courts,[5] commentators,[6] and the American Bar Association.[7]
Consistent with this analysis under rule 3.172, the relevant portion of the habitual *490 offender statute states unequivocally that before a defendant may enter a plea or be sentenced he or she must be given written notice of intent to habitualize:
Written notice shall be served on the defendant and his attorney a sufficient time prior to the entry of a plea or prior to the imposition of sentence so as to allow the preparation of a submission on behalf of the defendant.
§ 775.084(3)(b), Fla. Stat. (1987).
In Massey v. State, 609 So.2d 598, 600 (Fla. 1992), we stated that "[t]he purpose of requiring a prior written notice is to ... give the defendant and the defendant's attorney an opportunity to prepare for the hearing." This is so that a knowing and intelligent plea may be entered, and in the case of sentencing, an argument against habitualization may be readied. The court in Inmon properly interpreted this provision to mean that "the State shall serve notice on the defendant either before he enters a plea of guilty or nolo contendere, or, in the event he enters a plea of not guilty and submits to trial, prior to the imposition of sentence." Inmon, 383 So.2d at 1104. In this way, the legislature has extended the general pre-plea notice requirement of rule 3.172 to include specific written notice of intent to habitualize.
In sum, we hold that in order for a defendant to be habitualized following a guilty or nolo plea, the following must take place prior to acceptance of the plea: 1) The defendant must be given written notice of intent to habitualize, and 2) the court must confirm that the defendant is personally aware of the possibility and reasonable consequences[8] of habitualization.
In the present case, although Ashley failed to object to lack of notice at trial, no contemporaneous objection is required in order to preserve a purely legal sentencing issue. Taylor v. State, 601 So.2d 540 (Fla. 1992). The requirement of rule 3.172 and section 775.084 concerning pre-plea notice of habitualization is clearly a legal matter, involving no factual determination.
Not only was Ashley given no written notice of intent to habitualize prior to acceptance of his plea, he also was not told of the possibility or consequences of habitualization at the plea colloquy itself. In fact, habitualization was never mentioned. The entire discussion at the colloquy focused on the guidelines, clearly suggesting a guidelines sentence would be forthcoming:
MR. MASON [defense counsel]: The State is going to ask for just a [guidelines] score sheet, and we would be asking for a sentencing as soon as possible rather than make him go through a P.S.I.
... .
THE COURT: Do you have any idea where he is going to come out on the guidelines?
... .
MR. MASON: About three and a half to four and a half.
I calculated it roughly that it would be in that area.
... .
THE COURT: Well, I'm going to accept your plea.
I'm going to find that the facts are sufficient to constitute the crime, and that you have intelligently and knowingly entered your plea ... so, realistically, if we can get a [guidelines] score sheet on Friday, we'll set sentencing for Friday....
We note that Ashley's written plea is unequivocal. The document, which was sworn to, signed, and filed in open court during the colloquy and accepted by the judge, states that Ashley will be sentenced under the guidelines, receiving a term within the recommended range or a guidelines departure sentence capped by the standard statutory maximum of 5 years:
8. I understand my sentence will be imposed under the Sentencing Guidelines. A presumptive sentence will be *491 determined based upon certain factors. The Court can exceed this presumptive sentence and impose up to the maximum of 5 years by stating clear and convincing reasons. If the Sentencing Guideline range is exceeded I will have the right to appeal my sentence.
The record fails to show that at the time this plea was accepted Ashley had any personal understanding whatsoever that he would be habitualized or what habitualization entailed.[9]
Based on the foregoing, we quash the decision of the district court below, vacate Ashley's habitual offender sentence, and remand for imposition of a sentence consistent with the terms under which Ashley's plea was proffered and accepted  a guidelines or departure sentence.[10] We approve the decision in Inmon on this issue to the extent it is consistent with this opinion.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The recommended range for Ashley under the guidelines was 5 and 1/2 to 7 years. The statutory maximum was 5 years. Thus, the guidelines maximum was 5 years. Although the habitual offender maximum was 10 years, the judge imposed a 6-year habitual offender term. In addition to being a year longer than the maximum guidelines term, Ashley's habitual offender sentence also deprives him of eligibility for certain early release programs.
[2] Section 775.082, Florida Statutes (1989), provides:

(3) A person who has been convicted of any other designated felony may be punished as follows:
... .
(b) For a felony of the first degree, by a term of imprisonment not exceeding 30 years or, when specifically provided by statute, by imprisonment for a term of years not exceeding life imprisonment;
(c) For a felony of the second degree, by a term of imprisonment not exceeding 15 years;
(d) For a felony of the third degree, by a term of imprisonment not exceeding 5 years.
[3] Section 775.084, Florida Statutes (1989), provides:

(4)(a) The court ... shall sentence the habitual felony offender as follows:
1. In the case of a felony of the first degree, for life.
2. In the case of a felony of the second degree, for a term of years not exceeding 30.
3. In the case of a felony of the third degree, for a term of years not exceeding 10.
See also § 775.084(4)(b), Fla. Stat. (1989).
[4] Habitual violent felony offenders receive mandatory minimum terms of 15, 10, and 5 years for first-, second-, and third-degree felonies, respectively. § 775.084(4)(b), Fla. Stat. (1989).
[5] In Black v. State, 599 So.2d 1380 (Fla. 1st DCA 1992), wherein the district court reversed imposition of an habitual offender sentence, Judge Zehmer stated:

The trial court failed to make appropriate inquiry to determine that Black understood the significance of being sentenced as a "career criminal" under the habitual felony offender statute. The record indicates that prior to the pronouncement of the sentence ... the court did not inform Black that the maximum possible sentence he could receive for that offense was a term of imprisonment not exceeding 30 years as a habitual felony offender.
Id. at 1382-83 (Zehmer, J., specially concurring). But see Zambuto v. State, 413 So.2d 461 (Fla. 4th DCA 1982) (habitualization is a collateral, not direct, consequence of a plea).
[6] Professor LaFave states:

The better view is that the maximum possible sentence about which the defendant should be warned [prior to acceptance of a plea] includes punishment possible by virtue either of the sentence provisions of the statute under which the charge is brought or of other statutes that authorize added penalties because of special circumstances in the case, as where a statute provides for added punishment of persons who commit crimes while armed... . Equally desirable is a warning to the defendant of the fact, where the law so provides, that the sentencing provisions of the statute under which he is charged or a more general multiple offender statute provides for specified higher penalties if the instant offense puts the defendant into the repeater category.
2 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 20.4, p. 646-47 (1984) (footnotes and quotation marks omitted).
[7] 3 ABA Standards for Criminal Justice § 14-1.4 (2d ed. 1980).
[8] The defendant should be told of his or her eligibility for habitualization, the maximum habitual offender term for the charged offense, the fact that habitualization may affect the possibility of early release through certain programs, and, where habitual violent felony offender provisions are implicated, the mandatory minimum term. As noted in the rule, "[c]ounsel for the prosecution and the defense shall assist the trial judge in this function." Fla.R.Crim.P. 3.172(a).
[9] Although Ashley was given written notice of intent to habitualize prior to sentencing and raised no objection at the sentencing hearing, the discussion there was almost exclusively between the lawyers and judge. Under no circumstances can this later discourse serve as a substitute for the pre-plea personal interview required under rule 3.172.
[10] Ashley does not seek to withdraw his plea, but rather asks for imposition of a guidelines sentence.