638 So.2d 116 (1994)
Willie T. THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
No. 93-921.
District Court of Appeal of Florida, Fifth District.
June 3, 1994.
James B. Gibson, Public Defender, and Nancy Ryan, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Robin Compton Jones, Asst. Atty. Gen., Daytona Beach, for appellee.

*117 ON REHEARING EN BANC

HARRIS, Chief Judge.
We grant the State's motion for rehearing en banc, withdraw our previous opinion and substitute the following.
Willie T. Thompson entered into a negotiated plea with the State in which he acknowledged:
That should I be determined by the Judge to be a Violent Habitual Felony Offender, and should the Judge sentence me as such, I could receive up to a maximum sentence of 50 years imprisonment and a mandatory minimum of 20 years imprisonment and that as to any habitual offender sentence I would not be entitled to receive any basic gain time.
The court accepted the plea on October 14.[1] On November 12, the Judge filed a Notice and Order for Separate Proceeding to Determine if Defendant is Habitual Felony Offender or Habitual Violent Felony Offender. The defense moved to strike the notice as untimely. The judge denied the motion, determined that Thompson was an habitual violent felony offender and sentenced him as such. Thompson appeals; we reverse.
We acknowledge that this court in Oglesby v. State, 627 So.2d 585 (Fla. 5th DCA 1993), rev. denied, 637 So.2d 236 (Fla. 1994), held that a similar provision in a negotiated plea satisfied the notice requirement of Ashley v. State, 614 So.2d 486 (Fla. 1993). On further reflection, we find that such a provision does not satisfy the Ashley standard and recede from Oglesby.
Ashley requires that the defendant must be made aware prior to his plea that either the State intends to seek habitual offender treatment or that the court intends on its own to consider habitual offender treatment at sentencing. The previously quoted provision in the form negotiated plea does not suggest that the defendant will be considered for habitual offender treatment; it merely informs him generally as to the maximum sentence if he is so considered.
Ashley requires that the defendant be made aware that someone (the State or the Judge) will seek habitual offender treatment prior to his plea so that he can take that into account in deciding whether or not to plead. Merely advising him that the law may possibly be applicable to him (the statute itself gives him that notice) is not the same as advising him that someone will actively seek to apply it against him.
Ashley specifically holds:
In sum, we hold that in order for a defendant to be habitualized following a guilty or nolo plea, the following must take place prior to acceptance of the plea: (1) the defendant must be given written notice of intent to habitualize, and (2) the court must confirm that the defendant is personally aware of the possibility and reasonable consequences of habitualization.
Ashley, 614 So.2d at 490.
In the case at bar, condition two was met; condition one clearly was not.
We recede from Oglesby, reverse the sentence in this case and remand for resentencing. The Ashley court remanded for resentencing within the guidelines because that was consistent with Ashley's negotiated plea and Ashley had not requested to withdraw his plea. However, the Ashley court did not consider the possibility that the trial court might believe from a review of Ashley's record (a review only possible after the plea because the PSI was not prepared pre-plea) that it could not in good conscience proceed under the plea. In such instance, we have held that the trial court may sentence as it deems appropriate  consistent with guideline or habitualization restrictions  so long as it gives the defendant an opportunity to withdraw his or her plea and proceed to trial.[2] Giving the defendant the opportunity to withdraw the plea eliminates any prejudice that might otherwise occur because of a sentencing decision made on an after acquired *118 PSI. At resentencing, therefore, the trial court should either sentence within the guideline range or, if it believes that a greater sentence is justified, so advise the defendant and permit him to either accept the greater sentence or withdraw his plea.
REVERSED and REMANDED.
DAUKSCH, COBB, W. SHARP, PETERSON, GRIFFIN, DIAMANTIS and THOMPSON, JJ., concur.
GOSHORN, J., dissents, with opinion.
GOSHORN, Judge, dissenting.
Today, the majority unnecessarily expands the rule announced by the supreme court in Ashley v. State, 614 So.2d 486 (Fla. 1993) and imposes yet another requirement on the already overburdened trial judges of the State of Florida. In my view, attempting to comply with the majority's directive is unnecessarily burdensome in practice, is not needed to provide a defendant with the required constitutional protections, and is certain to generate legal challenges.
Justice Shaw succinctly set forth the analysis supporting the court's decision in Ashley:
Because habitual offender maximums clearly constitute the "maximum possible penalty provided by law"  exceeding both the guidelines and standard statutory maximums  and because habitual offender sentences are imposed in a significant number of cases, our ruling in Williams [v. State, 316 So.2d 267 (Fla. 1975)] and the plain language of rule 3.172 require that before a court may accept a guilty or nolo plea from an eligible defendant it must ascertain that the defendant is aware of the possibility and reasonable consequences of habitualization. To state the obvious, in order for the plea to be "knowing," i.e., in order for the defendant to understand the reasonable consequences of his or her plea, the defendant must "know" beforehand that his or her potential sentence may be many times greater what it ordinarily would have been under the guidelines and that he or she will have to serve more of it.
Ashley, 614 So.2d at 489 (emphasis added). Certainly, through his plea agreement, Thompson acknowledged the possibility and reasonable consequences of habitualization. He also acknowledges being informed of his potential sentence should he be habitualized. Therefore, in my view, Thompson was accorded the protections provided by the above quoted portion of Ashley.
The conflict, however, arises because the Ashley court, in summarizing its holding, worded its opinion as follows:
In sum, we hold that in order for a defendant to be habitualized following a guilty or nolo plea, the following must take place prior to acceptance of the plea: 1) The defendant must be given written notice of intent to habitualize, and 2) the court must confirm that the defendant is personally aware of the possibility and reasonable consequences of habitualization.
Id. at 490 (footnote omitted). The majority, reasonably, interprets this language to require that a defendant be advised, not of the possibility of habitualization, but that someone (i.e., the court or the state) will "actively seek his habitualization." However, further adding to the confusion as to the proper interpretation of Ashley is the footnote to the last quoted language stating that "the defendant should be told of his or her eligibility for habitualization." Id. (emphasis added). I conclude that a fair reading of the entire Ashley opinion requires only that a defendant be advised or acknowledge that he knows of the possibility, eligibility and consequences of habitualization.
My concern about the majority's insistence that a defendant be advised that either the court or the state will (as distinguished from may) attempt to habitualize is not merely theoretical. There are consequences, both legal and practical. Requiring the court to announce to a defendant, before accepting his or her plea, that the court will (as opposed to may) habitualize requires the court to make its decision prior to receipt and review of a presentence investigation, § 921.231, Fla. Stat. (1993), prior to a sentencing hearing and prior to review of any victim impact, § 921.143, Fla. Stat. (1993), all of which is contrary to the requirements of a sentencing hearing and is sure to raise additional legal challenges and charges that habitualization is *119 being imposed indiscriminately. Likewise, to require the state to announce that it will (as opposed to may) attempt to habitualize will provide further fodder to the voices challenging the state's use of the habitual offender statutes. In this regard, I note that often at or immediately before a plea, the trial court, the state and indeed the defendant, are unaware of the defendant's exact criminal history. Accordingly, the court can only announce that, if the defendant's history so justifies, the court may consider or the state may seek to habitualize the defendant.
I believe the plea agreement in this case affords the defendant the essential protections required by Ashley. There is no need to recede from Oglesby v. State, 627 So.2d 585 (Fla. 5th DCA 1993), review denied, 637 So.2d 236 (Fla. 1994) and it is bad policy to do so. I would affirm.
NOTES
[1] Although the court assured itself that Thompson understood the plea, there was no discussion that the court intended to consider habitual offender treatment.
[2] Bolling v. State, 631 So.2d 310 (Fla. 5th DCA 1994).