661 So.2d 282 (1995)
STATE of Florida, Petitioner,
v.
Richard BLACKWELL, Respondent.
STATE of Florida, Petitioner,
v.
Jessie BROWN, II, Respondent.
STATE of Florida, Petitioner,
v.
Darryl HOLMES, Respondent.
STATE of Florida, Petitioner,
v.
Robert JONES, Respondent.
STATE of Florida, Petitioner,
v.
Willie T. THOMPSON, Respondent.
Nos. 84071, 84176, 84148, 84150 and 83951.
Supreme Court of Florida.
July 20, 1995.
Rehearing Denied October 11, 1995.
*283 Robert A. Butterworth, Atty. Gen.; and Robin Compton Jones and Bonnie Jean Parrish, Asst. Attys. Gen., Daytona Beach, for petitioner.
James B. Gibson, Public Defender; and Nancy Ryan, Brynn Newton, M.A. Lucas, Daniel J. Schafer and S.C. Vanvoorhees, Asst. Public Defenders, Daytona Beach, for respondents.
SHAW, Justice.
We have for review the following decisions based on conflict with Ashley v. State, 614 So.2d 486 (Fla. 1993): Blackwell v. State, 638 So.2d 119 (Fla. 5th DCA 1994); Brown v. State, 638 So.2d 120 (Fla. 5th DCA 1994); Holmes v. State, 639 So.2d 151 (Fla. 5th DCA 1994); Jones v. State, 639 So.2d 147 (Fla. 5th DCA 1994); and Thompson v. State, 638 So.2d 116 (Fla. 5th DCA 1994). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash Blackwell, Brown, Holmes, Jones, and Thompson.
The defendants in the above consolidated cases pled guilty to various crimes, submitting written pleas containing the following provisions:
4. I have read the information or indictment in this case and I understand the charge(s) to which I enter my plea(s). My attorney has explained to me the total maximum penalties of the charge(s) and as a result I understand the following:
a. That should the Judge impose a guidelines sentence, I could receive up to a maximum sentence of ____ years imprisonment and a maximum fine of ____ or both.
b. That should the Judge impose a departure sentence, I could receive up to a maximum sentence of ____ years imprisonment and a fine of ___ or both.
c. That should I be determined by the Judge to be a Violent Habitual Felony Offender, and should the Judge sentence me as such, I could receive up to a maximum sentence of ____ years imprisonment and a mandatory minimum of ____ years imprisonment and that as to any habitual offender sentence I would not be entitled to receive any basic gain time.
d. That should I be determined by the Judge to be a Non-Violent Habitual Felony Offender, and should the Judge sentence me as such, I could receive up to a maximum sentence ____ years imprisonment and a mandatory minimum of ____ years imprisonment and that as to any habitual offender sentence I would not be entitled to receive any basic gain time.
e. That whether a guidelines sentence or departure sentence or habitual offender sentence, I will receive a mandatory minimum sentence of ____ years imprisonment.
The blank spaces in each plea were filled in with appropriate data.
The court discussed the pleas with the defendants and accepted the pleas. Later, the defendants were served with written notice of a separate proceeding to determine if they qualified for habitual offender treatment. After concluding that they qualified, *284 the court habitualized each defendant. The district court reversed the sentences pursuant to Ashley v. State, 614 So.2d 486 (Fla. 1993), and remanded for resentencing. The State petitioned for review.
This Court in Ashley held that before a court can habitualize a defendant pursuant to a plea two steps must be completed:
In sum, we hold that in order for a defendant to be habitualized following a guilty or nolo plea, the following must take place prior to acceptance of the plea: 1) The defendant must be given written notice of intent to habitualize, and 2) the court must confirm that the defendant is personally aware of the possibility and reasonable consequences of habitualization.
Ashley, 614 So.2d at 490 (footnote omitted).[1]
In the present cases, each defendant was informed of the possibility and consequences of habitualization via the provisions of his written plea. Additionally, prior to accepting the pleas, the court discussed the pleas with the defendants. The issue posed by these cases is whether these circumstances were sufficient to satisfy the requirements of Ashley.
In Ashley, the defendant was given no notice whatsoever of habitualization prior to acceptance of his plea. The entire discussion at the plea hearing centered on the sentencing guidelines, indicating a guidelines sentence would be forthcoming. Habitualization was never mentioned. Not until three days after acceptance of Ashley's plea did the State file notice of intent to seek habitualization. Ashley's motion to withdraw his plea was denied and he was sentenced to an habitual offender term.
We vacated Ashley's sentence because his plea was not knowing and intelligent. At the time his plea was entered and accepted, he did not have a clue he would be habitualized or what habitualization meant  he had in effect been blindsided. We do not have that situation in the present consolidated cases.
Each of the present defendants signed a written plea acknowledging the possibility and consequences of habitualization. The maximum terms, loss of gain time, and possible mandatory minimum terms were spelled out in detail. Before accepting the pleas, the court confirmed with each defendant that he had read the plea and understood it, and the court offered each defendant an opportunity to ask questions. Each defendant said he had read the plea, understood it, and had no questions.
The present pleas, we conclude, were knowing and intelligent under Ashley. Indeed, it would be difficult to give a defendant a clearer picture of his or her sentencing possibilities.
We hold that the first prong of Ashley ("[t]he defendant must be given written notice of intent to habitualize") is satisfied where the defendant receives written notice of the possibility of habitualization before his or her plea is accepted. The scenario to be avoided is where a defendant  like Ashley  receives no pre-plea notice whatsoever.
We quash Blackwell, Brown, Holmes, Jones, and Thompson, and remand for proceedings consistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] We explained the "consequences of habitualization" in Ashley v. State, 614 So.2d 486, 490 n. 8 (Fla. 1993):

The defendant should be told of his or her eligibility for habitualization, the maximum habitual offender term for the charged offense, the fact that habitualization may affect the possibility of early release through certain programs, and, where habitual violent felony offender provisions are implicated, the mandatory minimum term.