667 So.2d 242 (1995)
Lindsey WATSON, Appellant,
v.
STATE of Florida, Appellee.
No. 94-1650.
District Court of Appeal of Florida, First District.
August 23, 1995.
*243 Nancy A. Daniels, Public Defender, Phil Patterson, Assistant Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Attorney General, Richard Parker, Assistant Attorney General, Tallahassee, for appellee.
WEBSTER, Judge.
In this direct criminal appeal, appellant seeks review of the trial court's denial of his request, made prior to the imposition of sentence, that he be permitted to withdraw his previously entered no contest pleas. We conclude that it was an abuse of discretion not to permit appellant to withdraw his pleas. Accordingly, we reverse.
Appellant was charged by informations filed in four separate cases with three counts of burglary of a dwelling; and one count each of burglary of a structure, burglary of a conveyance, grand theft and petit theft. In addition, reports were filed alleging that appellant had violated his probation in two earlier cases involving convictions for burglary of a dwelling and burglary of a structure. Initially, not guilty pleas were entered with regard to all of the new charges. However, at a subsequent hearing, a lengthy "Petition to Enter Plea of Guilty or Nolo Contendere" was filed. According to that document, appellant wished to withdraw his prior pleas of not guilty, and to enter pleas of nolo contendere to one count each of burglary of a dwelling, burglary of a structure and trespass, and to violation of probation in both of the earlier cases. The document reflects the understanding that the state would dismiss one count of burglary of a dwelling and the petit theft charge; and that it would request an 8-year habitual offender sentence. There is no mention of the disposition of the other charges, or of whether any sentences that might be imposed would run concurrently or consecutively.
At the same hearing, appellant was placed under oath. Appellant's counsel then summarized portions of the "Petition"  that it "would anticipate" that appellant was "pleading to two violations of probation ...[,] to a burglary of a dwelling ...[,] to ... a lesser included trespass charge ... and ... to ... burglary of a structure"; and that, in return, the state would dismiss one count of burglary of a dwelling and the petit theft charge, and request that appellant be sentenced as an habitual offender to eight years in prison. In response to questions from his attorney, appellant acknowledged understanding that he was free to argue at sentencing that he should be sentenced according to the sentencing guidelines; that a pre-sentence investigation would be performed; that, with regard to the new burglary of a dwelling charge, the state "would be able to show that [his] fingerprints were found on a point of entry in a house in which some stereo-type equipment was taken"; that, with regard to the new burglary of a structure charge, the state "would be able to present evidence that [he] removed a battery from a vehicle parked in a carport in a residence  a structure"; that, with regard to the trespass charge, the state "would be able to show that [he was] located in a kitchen in a private residence drinking beer that [he] had brought with [him]," without the owner's permission; and that "the battery removal took place after [he had been] placed on probation and [did] in and of itself violate [his] probation." He acknowledged also that his signature appeared on the "Petition." The trial court then asked appellant whether he understood that, if he were sentenced as an habitual offender, "they would give [him] less gain time credits than [he] would normally get," to which appellant responded in the affirmative. Having asked only that one question, the trial court announced that it was "willing to accept the plea, and ... [would] order a presentence investigation." At the end of the hearing, the state announced that it would not "prosecute the remaining counts in the cases to which [appellant] ha[d] entered a plea."
Five weeks later, appellant was again in court, for sentencing. The hearing commenced with a long, disjointed statement by *244 appellant, clearly indicating that he was confused regarding the status of his cases. Appellant said that he and his attorney had "communications difficulty," a representation with which his attorney agreed. When the trial court inquired whether appellant was "asking to withdraw the plea that's been entered," appellant responded in a way which clearly indicated that he did not understand that he had previously entered pleas. The trial court then asked, "[s]o it's your request at this point to withdraw the  whatever you did," to which appellant responded in the affirmative. The trial court refused to permit appellant to withdraw his pleas, saying that, at the prior hearing, "we did go over the plea papers very clearly." Appellant was then sentenced to time served on the trespass charge, and to eight years concurrent, as an habitual offender, in "[t]he other cases."
Florida Rule of Criminal Procedure 3.170(k), which is titled "Responsibility of Court on Pleas," states that "[n]o plea of guilty or nolo contendere shall be accepted by a court without the court first determining, in open court, with means of recording the proceedings stenographically or mechanically, that the circumstances surrounding the plea reflect a full understanding of the significance of the plea and its voluntariness... ." Florida Rule of Criminal Procedure 3.172(a) is to the same effect. Such a procedure is a matter of federal constitutional mandate. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274, 279 (1969) (holding that "[i]t was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary"). Accord Ashley v. State, 614 So.2d 486 (Fla. 1993); Koenig v. State, 597 So.2d 256 (Fla. 1992). To ensure a proper record from which the voluntariness of a plea might be ascertained, Florida Rule of Criminal Procedure 3.172(c), titled "Determination of Voluntariness," provides:
[T]he trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he or she understands:
(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law;
(2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding against him or her and, if necessary, one will be appointed to represent him or her;
(3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made and that the defendant has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to compel attendance of witnesses on his or her behalf, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself;
(4) that if the defendant pleads guilty, or nolo contendere without express reservation of the right to appeal, he or she gives up the right to appeal all matters relating to the judgment, including the issue of guilt or innocence, but does not impair the right to review by appropriate collateral attack;
(5) that if the defendant pleads guilty or is adjudged guilty after a plea of nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he or she waives the right to a trial;
(6) that if the defendant pleads guilty or nolo contendere, the trial judge may ask the defendant questions about the offense to which he or she has pleaded, and if the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against him or her in a prosecution for perjury;
(7) the complete terms of any plea agreement, including specifically all obligations the defendant will incur as a result; and
(8) that if he or she pleads guilty or nolo contendere the trial judge must inform him or her that, if he or she is not a United *245 States citizen, the plea may subject him or her to deportation pursuant to the laws and regulations governing the United States Immigration and Naturalization Service. It shall not be necessary for the trial judge to inquire as to whether the defendant is a United States citizen, as this admonition shall be given to all defendants in all cases.
The record in this case reflects no effort to determine that appellant understood any of the matters listed in Rule 3.172(c) before the trial court accepted the pleas.
We are unable to distinguish the operative facts regarding the acceptance of the pleas in this case from those relating to the taking of the pleas in Koenig v. State, 597 So.2d 256 (Fla. 1992). In Koenig, because "the record [did] not show that his plea was an intelligent and voluntary waiver of his constitutional rights" (id. at 257), the court "vacate[d] Koenig's convictions and sentences ..., and remand[ed] with directions to the trial court to allow Koenig to plead anew." Id. at 258. Accord Goodwin v. State, 598 So.2d 295 (Fla. 1st DCA 1992). Here, as in Koenig, the "brief colloquy" between the trial court and appellant addressed none of the matters listed in Rule 3.172(c). Also here, as in Koenig, although appellant had signed a form which addressed in some detail the matters listed in Rule 3.172(c), the record contains nothing which so much as suggests that appellant understood the contents of that form; nor does the record "reflect the extent of [appellant's] education or whether he can even read." 597 So.2d at 258.
Whether a defendant should be permitted to withdraw a previously entered plea of guilty or nolo contendere is a question addressed to the discretion of the trial court. Fla.R.Crim.P. 3.170(f). However, such discretion is not unbridled. Rather, it is constrained by the interests of justice. E.g., Ryals v. State, 516 So.2d 1092 (Fla. 5th DCA 1987); Ritchie v. State, 458 So.2d 877 (Fla. 2d DCA 1984).
Here, the record fails affirmatively to reflect that appellant's pleas were intelligent and voluntary. Under the circumstances, we believe that it was error of a federal constitutional dimension to refuse to permit appellant to withdraw his pleas pursuant to his request. Accordingly, we reverse appellant's judgments and sentences, and remand with directions that the trial court permit appellant to plead anew. Of course, the state is entitled to reinstate all of the charges previously dismissed. E.g., Geiger v. State, 532 So.2d 1298 (Fla. 2d DCA 1988).
REVERSED and REMANDED, with directions.
WOLF, J., concurs.
LAWRENCE, J., dissents with written opinion.
LAWRENCE, Judge, dissenting.
I respectfully dissent because the trial judge did not, in my view, abuse his discretion in failing to permit the defendant Watson to withdraw his plea. This is not a case of a defendant failing to understand his plea agreement, but rather that of a defendant who got "cold feet" after entering a plea, and five weeks later, at the time of sentencing, sought to use a less than perfect plea colloquy as an excuse to breach his plea agreement.
Watson does not complain that he failed to understand the details of his plea agreement, but only that he did not understand that he was actually entering a plea of nolo contendere at the time of the plea colloquy. The trial judge did not believe him, and indeed, the record belies his contention. The trial judge began the plea colloquy as follows:
THE COURT: I need to make sure that you fully understand this plea, that nobody's made any promises that we don't discuss here today, and that nobody has made you any threats or anything like that, and that you understand the consequences of your plea, what could happen, and what's likely going to happen if we know what's likely going to happen, so we'll go over the plea with you. If there's anything you don't understand, be sure and speak up.
As part of the plea colloquy, Watson's attorney explained in detail the charges to which Watson was pleading and the possible sentences which could be imposed. A factual basis for the plea was established and Watson acknowledged that the signature on his *246 plea agreement was genuine. The trial judge explained that the issue of whether the defendant would be sentenced as an habitual offender would be left for the court to determine, and he explained in detail the consequences of that possibility. The trial judge then accepted the plea, and ordered a presentence investigation report.
Had Watson complained of some aspect of his plea about which he was not advised, he could have demonstrated prejudice and been entitled to withdraw his plea. In fact, the only prejudice which Watson can demonstrate is the inability to change his mind about entering a plea of nolo contendere, a privilege to which he has no right and one which is within the sound discretion of the trial court.
Watson has great experience in the criminal justice system. At the time he entered his plea to two new felonies and one misdemeanor, he had been previously convicted of five felonies and two misdemeanors, qualifying as an habitual felony offender. He was described by his own defense attorney as "intelligent" and "capable". It stretches my imagination, as it obviously did that of the trial judge, that Watson did not know he was involved in a plea colloquy.
I am of the view that a trial judge should not be saddled with a yoke of this description, but should be left to exercise his sound discretion in these matters. I would affirm the judgment and sentence.