663 So.2d 1376 (1995)
Taurance YOUNG, Appellant,
v.
STATE of Florida, Appellee.
No. 95-303.
District Court of Appeal of Florida, Fifth District.
December 1, 1995.
James B. Gibson, Public Defender, and Dan D. Hallenberg, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, Judge.
Young appeals from the sentences he received in four different criminal cases after having entered guilty pleas in all, and after being sentenced as an habitual felony offender. On appeal, he argues the trial court erred in accepting his pleas because he was not notified he would be considered for a habitual offender sentencing, and because the trial judge erred in initiating the habitual offender sentencing procedure pursuant to section 775.08401, Florida Statutes (1993). We find no merit in either of these two arguments, but we agree with appellant that he is entitled to relief on three other points he raised: a discrepancy as to whether Young pled guilty to a first or a second degree grand theft charge in one case; imposing special conditions of probation which were not orally pronounced at sentencing; and imposing as a special condition of probation payment of money to First Step of Volusia County, Inc.
The record shows in this case that the trial court accepted Young's guilty pleas in four criminal cases involved in this proceeding. Case No. 94-31931, grand theft and conspiracy to commit grand theft (§ 812.014, Fla. Stat. (1993)); Case No. 94-31038, grand theft of the second degree (§ 812.014, Fla. Stat. (1993)); Case No. 94-32941, unlawful sale or delivery of a controlled substance (§ 817.563, Fla. Stat. (1993)); and Case No. 94-30589, battery (§ 784.045, Fla. Stat. (1993)). Young had signed written plea agreements in each *1377 case. All but the battery case contained statements that Young could be considered for habitual offender sentences if appropriate, and set out the potential maximum sentence for each crime, if he were to be sentenced in that manner.
At the plea hearing the trial judge asked Young if he understood the plea agreements, and if he had been advised by counsel as to their content. He responded affirmatively. The judge then asked Young:
Do you understand that as a result of these pleas, that a proceeding can be set up by the Court or requested by the state to determine whether or not you have two or more felony convictions, which would classify you as a habitual offender? And that if, in fact, it is shown that you do have the requisite felony convictions, that you could be determined and would be determined to be a habitual felony offender, in which event, those sentencing exposures that I have already explained to you would double?
Young again responded in the affirmative. The judge went through each offense and possible sentence, asking Young if he understood his sentence could be doubled in each case, if he were habitualized. Young responded "Yes, Sir." The court also explained that if habitualized, Young would receive no basic gain time.
Further, at the sentencing hearing, when defense counsel raised an objection to the sentences, the court asked:
Are you claiming that the defendant has not been advised of the habitualization offender sentencing exposure by you in connection with you explaining the possible consequences of his plea prior to the court accepting the plea?
Defense counsel said "No, Sir.". In fact defense counsel agreed with the trial court that he had "explained to him (Young) thoroughly that the Court could find him to be a habitual offender and would set a hearing to make a determination in that regard and if he, in fact, had two or more prior felony convictions, that he would be found by the Court to be found a habitual felony offender and may or may not receive sentence to an extended term... ."
Young argues that a defendant must be notified that in fact the state or court intends to seek habitual offender sentencing for that defendant before a plea of guilty can be accepted. Notification that habitualization theoretically or possibly may be sought is not sufficient. However, the Florida Supreme Court has recently clarified that the kind of notice given in this case is legally sufficient. State v. Blackwell, 661 So.2d 282 (Fla. 1995); Gibson v. State, 660 So.2d 298 (Fla. 5th DCA 1995).
Young also argues that the trial court could not, on its own initiative, notify him that it would hold a hearing to determine if he was an habitual felony offender, pursuant to section 775.084. The 1993 amendment to this statute requires the state attorney in each judicial circuit to adopt uniform criteria to be used in determining if an offender should be sentenced as an habitual offender, and that if the criteria are deviated from in any case, a written explanation must be filed in the case by the state attorney.[1] The appellant takes the position that under the amended statute, only the state attorney can initiate habitual offender proceedings.
We disagree. The amended statute does not preclude the trial judge from initiating a proceeding to sentence a person as an habitual felony offender. The requirements in the statute, which were added by the amendment, to adopt uniform criteria for eligibility for habitual offender sentencing, and to apply them uniformly were designed to ensure that the state attorney fairly and impartially applies the habitual offender statute. But it does not suggest that the trial judge may not *1378 initiate the proceeding. We held that a trial judge has this power under the earlier statute.[2] The amendment appears to have left this power intact.
Both Young and the state agree that the record in this case shows that in Case 94-31038 Young pled guilty to a second degree grand theft charge. However, he was adjudicated guilty and sentenced to a first degree grand theft charge in that case. We agree that the judgment should be corrected on that point. However, the sentence need not be modified because Young was properly sentenced as an habitual offender for that offense to a term of fifteen years in the Department of Corrections, followed by five years on probation.
Young also argues that the trial court improperly imposed conditions of probation in Cases 94-31038 and 94-31931. In these cases the trial court imposed written conditions of probation requiring him to pay for random drug testing and mental health counseling, which it did not orally announce at sentencing. The requirement that a defendant pay for such testing is not authorized by section 948.03(1)(k), Florida Statutes (Supp. 1994), and as such constitutes a special condition of probation, which must be orally announced at sentencing. See Luby v. State, 648 So.2d 308 (Fla. 2d DCA 1995). Under these circumstances, the practice of this district is to remand to the trial court, to permit it to resolve the discrepancy between the written record and the record of the oral pronouncement. If these conditions are to be imposed, the court must make its intention known to the appellant, and he must be afforded an opportunity to object. Justice v. State, 658 So.2d 1028 (Fla. 5th DCA 1995). However, we certify the same question to the Florida Supreme Court, in this case as in Justice:
WHERE A SENTENCE IS REVERSED BECAUSE THE TRIAL COURT FAILED TO ORALLY PRONOUNCE CERTAIN SPECIAL CONDITIONS OF PROBATION WHICH LATER APPEARED IN THE WRITTEN SENTENCE MUST THE COURT SIMPLY STRIKE THE UNANNOUNCED CONDITIONS, OR MAY THE COURT ELECT TO REIMPOSE THOSE CONDITIONS AT RESENTENCING?
We strike the special condition of probation in Case 94-31038 that requires Young to pay $60.00 to First Step of Volusia County, Inc., as unauthorized. Tibero v. State, 646 So.2d 213 (Fla. 5th DCA 1994).
AFFIRMED in part; REMANDED for Resentencing in Cases 94-31038 and 94-31931; Special Condition of Probation in Case 94-31038 STRICKEN.
PETERSON, C.J., concurs.
HARRIS, J., concurs specially with opinion.
HARRIS, Judge, concurring specially:
I concur with Judge Sharp's handling of the Ashley v. State, 614 So.2d 486 (Fla. 1993) issue relating to pre-plea notice of intent to habitualize. Young contends that the notice that he might possibly be habitualized if he qualifies as an habitual offender which was contained in his plea form was insufficient Ashley notice. His position, of course, is based on the statement in Ashley:
Consistent with this analysis under rule 3.172, the relevant portion of the habitual offender statute states unequivocally that before a defendant may enter a plea or be sentenced he or she must be given written notice of intent to habitualize ...
Ashley v. State, 614 So.2d at 489-90 (emphasis added).
It is Young's position that the supreme court's use of the term "intent to habitualize" implies that the defendant has been determined to possess the requisite record and that someone, the court or the State, actually has decided to pursue habitual sentencing. Since the statute does not contemplate that every felon who possesses a qualifying record will be sentenced as an habitual offender, Young urges that merely telling him that the court might conduct such a sentencing if he qualifies as an habitual offender did not meet the express requirement of Ashley that he be told, prior to plea, that he would be exposed *1379 to habitualization. This court was also confused by Ashley. See Thompson v. State, 638 So.2d 116 (Fla. 5th DCA 1994), quashed, 661 So.2d 282 (Fla. 1995).
However, as indicated in the majority, the supreme court has now held in State v. Blackwell, 661 So.2d 282 (Fla. 1995), that notice to the defendant that he might possibly be habitualized is the legal equivalent of giving him notice of intent to habitualize.
But there remains a troubling aspect of habitualization. Who is to decide, the court or the State, which of the many eligible felons will be singled out for habitualization?
In King v. State, 557 So.2d 899 (Fla. 5th DCA 1990), rev. denied, 564 So.2d 1086 (Fla. 1990), we held in response to King's claim that section 775.084 was unconstitutionally vague because it did not provide who should decide which qualified candidates should be habitualized that either the State or the court could initiate such classification because "there is nothing in the statute to suggest that the legislature intended otherwise."
That was true in 1990. It was also true in 1992 when we decided Toliver v. State, 605 So.2d 477 (Fla. 5th DCA 1992), rev. denied, 618 So.2d 212 (Fla. 1993), and in May, 1993 when we decided Turcotte v. State, 617 So.2d 1164 (Fla. 5th DCA 1993). However, effective June 17, 1993, the legislature enacted section 775.08401:

Habitual offenders and habitual violent felony offenders; eligibility criteria. The state attorney in each judicial circuit shall adopt uniform criteria to be used in determining if an offender is eligible to be sentenced as a habitual offender or a habitual violent felony offender. The criteria shall be designed to insure fair and impartial application of the habitual offender statute. A deviation from this criteria must be explained in writing, signed by the state attorney, and placed in the case file maintained by the state attorney. A deviation from the adopted criteria is not subject to appellate review.
By the enactment of the statute, the legislature recognized that since every felon who has a record that would otherwise qualify for habitual treatment will not, and should not, be habitualized, there must be some standard (at least within any particular circuit) on which to base a sentencing decision. By placing the obligation on the state attorney to develop and maintain the appropriate criteria, in my view, the legislature has now expressed an intent that the separate proceedings required by section 775.084(3) must be invoked by, and only by, the office of the state attorney. Otherwise the purpose of such section can be avoided by merely deferring to the sentencing philosophy of each individual judge. Did the legislature intend that a judge could sentence one as an habitual offender who would not be so qualified under the criteria established by the state attorney?[1]
This court raised this issue in Santoro v. State, 644 So.2d 585, 586 n. 4 (Fla. 5th DCA 1994). Our opinion in Santoro was quashed by the supreme court in State v. Santoro, 657 So.2d 1161 (Fla. 1995), based on State v. Blackwell, 661 So.2d 282 (Fla. 1995). However, this particular issue was not addressed in the Blackwell opinion. I suggest that the question of whether the trial court retains the authority to initiate habitual sentencing consideration be added to the certified question herein.
NOTES
[1] Specifically, section 775.08401 provides:

The state attorney in each judicial circuit shall adopt uniform criteria to be used in determining if an offender is eligible to be sentenced as a habitual offender or a habitual violent felony offender. The criteria shall be designated to ensure fair and impartial application of the habitual offender statute. A deviation from this criteria must be explained in writing, signed by the state attorney, and placed in the case file maintained by the state attorney. A deviation from the adopted criteria is not subject to appellate review.
[2] Turcotte v. State, 617 So.2d 1164 (Fla. 5th DCA 1993); Toliver v. State, 605 So.2d 477 (Fla. 5th DCA 1992), rev. denied, 618 So.2d 212 (Fla. 1993).
[1] I recognize that another panel of this court in Kirk v. State, 663 So.2d 1373 (Fla. 5th DCA 1995), released on the same date as this opinion, holds that the trial judge continues to have the authority to initiate habitual sentencing even if the state attorney, based on approved criteria, elects not to request such sentence.