840 So.2d 404 (2003)
Kelli S. SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-3710.
District Court of Appeal of Florida, Fourth District.
March 19, 2003.
*405 Carey Haughwout, Public Defender, and Alan T. Lipson, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Kelli Smith appeals the denial of her motion to withdraw her no contest plea. We reverse.
On March 29, 2001, Smith entered her plea of no contest to two drug charges. The plea contemplated that she would be transferred to drug court for disposition. On April 16, 2001, Smith moved to withdraw her plea. She asserted that she did not understand the conditions and requirements of drug court until after the plea, when she met with a drug court representative.
At the hearing on the motion to withdraw, defense counsel told the court that at the time of the plea, drug court was still relatively new and the public defender's office was not aware of all of its requirements. Defense counsel was therefore unable to properly advise Smith of the drug court requirements prior to entering the plea. He said that once Smith was informed of all of the conditions, she immediately told him that she wanted to withdraw her plea and go to trial.
Smith testified that her lawyer advised her that she would be evaluated for the program; if it was determined that she did not have a drug problem, then "there would be really nothing that [I would have] to do," and charges would be dropped. After her evaluation revealed no drug problem, Smith learned that she would still face a year in drug court and have to attend regular AA or NA meetings. She explained, "I was totally unaware of anything of the whole conditions of the Drug *406 Court ... there's so much stuff that you have to do there. And for someone who doesn't have a problem, I can't see doing it." On cross-examination, Smith acknowledged that at the plea colloquy, she said that she understood her case would be transferred to drug court and that she asked no questions about the sentence.
When a defendant files a Florida Rule of Criminal Procedure 3.170(f) motion to withdraw prior to sentencing, "[t]he court may in its discretion, and shall on good cause, at any time before a sentence, permit a plea of guilty to be withdrawn...." (Emphasis added). Thus, the trial court is obligated to allow the defendant as a matter of right to withdraw a plea if good cause is shown, while in situations where less than good cause is shown, a trial court's decision will not be reversed absent an abuse of discretion. See Robinson v. State, 761 So.2d 269, 273-74 (Fla. 1999); Catinella v. State, 732 So.2d 444, 445 (Fla. 4th DCA 1999). In either situation, this rule should be liberally construed in favor of a defendant; this is because the law inclines towards a trial on the merits, and where it appears the interests of justice would be served, a defendant should be permitted to withdraw the plea. See Robinson, 761 So.2d at 274; see also Catinella, 732 So.2d at 445.
A defendant should be permitted to withdraw a plea if she files a proper motion and proves that the plea was entered under mental weakness, mistake, surprise, misapprehension, fear, promise, or other circumstances affecting her rights. Robinson, 761 So.2d at 274 (citing Yesnes v. State, 440 So.2d 628, 634 (Fla. 1st DCA 1983)). It is not enough for a defendant to merely allege one of these grounds has been met; instead "the defense must offer proof that the plea was not voluntarily and intelligently entered." Robinson, 761 So.2d at 274.
Nothing in the record contradicted Smith's assertion that she did not understand the requirements of drug court. The brief plea colloquy did not discuss it. The court only asked Smith eight questions. The colloquy did not cover any of the terms of the plea agreement or sentence, except to say that the case would be transferred to drug court. The plea form referred to in the colloquy contained no information about drug court. Defense counsel conceded that he did not know enough about the program to advise his client of its particulars. Only after Smith filed her motion to withdraw the plea did the state file a copy of a drug court agreement with the trial court.[1]
Here, Smith should have been allowed to withdraw her plea, because the record contained no evidence contradicting her misunderstanding of the requirements of her sentence. See Timothee v. State, 721 So.2d 776 (Fla. 4th DCA 1998) (allowing defendant to withdraw plea prior to sentencing where record did not contradict his claim that he misunderstood the terms of a substantial assistance agreement); see also Whipple v. State, 789 So.2d 1132 (Fla. 4th DCA 2001) (holding defendant was entitled to withdraw his guilty plea based on misadvice of defense counsel who informed *407 defendant prior to plea that he would face a license revocation, rather than informing the defendant he could face a permanent license revocation); Thornton v. State, 747 So.2d 439, 440 (Fla. 4th DCA 1999) (finding defendant entitled to withdraw plea where trial court failed to advise defendant that he faced a mandatory minimum sentence at plea colloquy described as "casual in its observance of formalities usually attendant in taking pleas"); Daniels v. State, 716 So.2d 827 (Fla. 4th DCA 1998) (holding that defendant entitled to withdraw plea where neither in written petition to enter plea, nor in the plea colloquy, was he informed that he faced a possible suspension of his driver's license); Graham v. State, 779 So.2d 604 (Fla. 2d DCA 2001) (determining defendant entitled to withdraw his plea based on counsel's mistaken advice that his photo would not be placed on the Internet).
REVERSED AND REMANDED.
STONE, J., concurs.
MAY, J., concurs specially with opinion.
MAY, J., concurring specially.
I concur with the majority, but write to call attention to the need for attorneys practicing in the criminal, juvenile delinquency, family, and dependency areas to educate themselves about drug courts. In 2001, the Florida Legislature enacted Chapter 2001-48, Section 1, Laws of Florida. The statute provides:
(1) It is the intent of the Legislature to implement treatment-based drug court programs in each judicial circuit in an effort to reduce crime and recidivism, abuse and neglect cases, and family dysfunction by breaking the cycle of addiction which is the most predominant cause of cases entering the justice system. The Legislature recognizes that the integration of judicial supervision, treatment, accountability, and sanctions greatly increases the effectiveness of substance abuse treatment. The Legislature also seeks to ensure that there is a coordinated, integrated, and multidisciplinary response to the substance abuse problem in this state, with special attention given to creating partnerships between the public and private sectors and to the coordinated, supported, and integrated delivery of multiple-system services for substance abusers, including a multiagency team approach to service delivery.
(2) Each judicial circuit shall establish a model of a treatment-based drug court program under which persons in the justice system assessed with a substance abuse problem will be processed in such a manner as to appropriately address the severity of the identified substance abuse problem through treatment plans tailored to the individual needs of the participant. These treatment-based drug court program models may be established in the misdemeanor, felony, family, delinquency, and dependency divisions of the judicial circuits.
§ 397.334, Fla. Stat. (2002). Indeed, the Governor's Office of Drug Control has identified drug courts as the "crown jewel" of its drug control strategy.
Drug courts have been in existence since 1989, originating from the creativity, hard work, and ingenuity of Chief Judge Gerald T. Wetherington and Judge Herbert M. Klein. Since then the concept has spread throughout this country and the world. There are currently drug courts in fortyeight of our fifty states, and in England, Canada, Australia, South America, Bermuda, and the Caribbean. There are currently seventy-four drug courts (thirtyeight *408 adult, twenty-two juvenile, twelve dependency, and two re-entry) in the State of Florida. It is essential that lawyers educate themselves as to the availability, requirements, and appropriateness of drug court programs. Only then can they effectively advise their clients. It is equally important for the institutions that educate future lawyers, as well as those that educate the other disciplines that play vital roles in the drug court process to incorporate drug courts into their curricula.
For lawyers to do otherwise is for them to become legal dinosaurs. To ignore the need to learn about the drug court process is to ignore the evolution of the justice system. The sooner the Bar educates itself, the sooner the issue raised in this case will become extinct.
NOTES
[1] We note that had a signed drug court agreement been adequately covered in the plea colloquy, then the result in this case would have been different. See, e.g., State v. Blackwell, 661 So.2d 282, 283-84 (Fla.1995) (holding defendants not entitled to withdraw their pleas where they signed written pleas acknowledging the possibility and consequences of habitualization, where the defendants were served with written notice of a separate proceeding to determine if they qualified for habitual offender treatment, and where the court discussed the pleas and the consequences of the pleas with the defendants at the plea colloquy).